**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NEW CIVIL LIBERTIES ALLIANCE,<br><br>       Plaintiff,<br><br>      v.<br><br>SECURITIES AND EXCHANGE<br>COMMISSION,<br><br>       Defendant. | No. 22-cv-03567-CJN |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF SEC'S MOTION FOR SUMMARY JUDGMENT**</u>

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................ 1

II.   STATEMENT OF FACTS ............................................................................... 1

III.  PROCEDURAL BACKGROUND.................................................................... 6

IV.  ARGUMENT .................................................................................................... 6

      A.    Summary judgment is appropriate because no material facts are in dispute. ......... 8

      B.    The SEC properly withheld information under FOIA Exemptions 5 and 6 in responding to Plaintiff's First Category.................................................................. 8

            1.    Agencies can withhold exempt information when responding to FOIA requests. ...................................................................................... 8

            2.    Exemption 5 allows agencies to withhold documents protected by the attorney work-product doctrine and the deliberative process privilege...... 9

            3.    The SEC properly determined that communications with BRG and General Dynamics were intra-agency communications. ......................... 10

            4.    The SEC properly withheld information under the attorney work-product doctrine. .................................................................................. 11

            5.    The SEC properly withheld information under the deliberative process privilege. ................................................................................ 14

            6.    The SEC properly withheld information under Exemption 6.................. 17

            7.    The SEC conducted a segregability analysis and reasonably foresaw that disclosure of the withheld information would harm interests protected by Exemptions 5 and 6.................................................................................. 20

      C.    The SEC has not withheld any information from the Second Category............... 22

V.    CONCLUSION................................................................................................ 24

# TABLE OF AUTHORITIES

## CASES

*ACLU v. CIA*, No. 1:18-cv-2784 (CJN), 2022 WL 306360 (D.D.C. Feb. 2, 2022).....................17

*ACLU v. Dep't of Defense*, 628 F.3d 612 (D.C. Cir. 2011) .............................................................9

*Amiri v. NSF*, No. 1:20-cv-02006 (TNM), 2021 WL 4438910 (D.D.C. Sept. 28, 2021) .........9, 14

*Cause of Action Inst. v. U.S. DOJ*, 282 F. Supp. 3d 66 (D.D.C. 2017) .........................................8

*Cause of Action Inst. v. U.S. DOJ*, 513 F. Supp. 3d 116 (D.D.C. 2021) .......................................8

*Center for Biological Diversity v. U.S. EPA*, 369 F. Supp. 3d 128 (D.D.C. 2019) ......................16

*Chavis v. U.S. DOJ*, No. 1:20-cv-00638 (TNM), 2021 WL 1668069 (D.D.C. Apr. 28, 2021)......9

*Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585 (D.D.C. Nov. 21, 2022) 6, 7, 14

*Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 21-2201 (RC), 2022 WL
    4182189 (D.D.C. Sept. 13, 2022) .........................................................................................8

*Competitive Enter. Inst. v. United States EPA*, 232 F. Supp. 3d 172 (D.D.C. 2017) ..................14

*Cotton v. Adams*, 798 F. Supp. 22 (D.D.C. 1992) ........................................................................19

*Davidson v. United States*, 264 F. Supp. 3d 97 (D.D.C. 2017) ..............................................18, 19

*Democracy Forward Found. v. Centers for Medicare & Medicaid Servs.*, No. CV 18-635 (JDB),
    2020 WL 1508508 (D.D.C. March 30, 2020).....................................................................11

*Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1 (2001) .........................10

*Dillon v. U.S. DOJ*, 444 F. Supp. 3d 67 (D.D.C. 2020).................................................................7

*Elec. Frontier Found. v. U.S. DOJ*, 739 F.3d 1 (D.C. Cir. 2014).........................................14, 15

*Elec. Privacy Info. Ctr. v. U.S. DOJ*, 320 F. Supp. 3d 110 (D.D.C. 2018) .................................16

*Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM), 2018 WL 2324084 (D.D.C. May 22,
    2018) ...................................................................................................................................20

*Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97 (D.D.C. 2010) ....... 10, 18

*Greenspan v. Bd. of Governors of the Fed. Rsrv. Sys.*, No. 1:21-cv-01968 (TNM), 2022 WL
17356879 (D.D.C. Dec. 1, 2022) ................................................................................... 7, 8, 9

*Hall & Assocs. v. U.S. EPA*, No. 16-5315, 2018 WL 1896493 (D.C. Cir. Apr. 9, 2018) ........... 23

*Hertzberg v. Veneman*, 273 F. Supp. 2d 67 (D.D.C. 2003) ......................................................... 12

*Horvath v. U.S. Secret Serv.*, 419 F. Supp. 3d 40 (D.D.C. 2019) ................................................. 19

*Jarvis v. Comm'r, Soc. Sec. Admin.*, No. 18-5170, 2018 WL 6722401
(D.C. Cir. Dec. 18, 2018) .................................................................................................. 23

*Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 736 F. Supp. 2d 202 (D.D.C.
2010) ................................................................................................................................... 21

*Judicial Watch, Inc. v. U.S. DOJ*, 432 F.3d 366 (D.C. Cir. 2005) ............................................... 21

*Judicial Watch, Inc. v. U.S. DOJ*, 806 F. App'x 5 (D.C. Cir. 2020) ............................................ 12

*Leopold v. U.S. DOJ*, 487 F. Supp. 3d 1 (D.D.C. 2020) ............................................................. 13

*Lewis v. U.S. Dep't of Treasury*, No. 17-cv0943 (DLF), 2020 WL 1667656 (D.D.C. Apr. 3,
2020) ................................................................................................................................... 17

*McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331 (D.C. Cir. 2011) ....... 10, 12

*Media Research Ctr. v. U.S. DOJ*, 818 F. Supp. 2d 131 (D.D.C. 2011) ........................................ 7

*Miller v. U.S. DOJ*, 872 F. Supp. 2d 12 (D.D.C. 2012) ................................................................. 7

*Nat'l Sec. Archive v. CIA*, 752 F.3d 460 (D.C. Cir. 2014) ........................................................... 16

*Nova Oculus Partners, LLC v. U.S. SEC*, 486 F. Supp. 3d 280 (D.D.C. 2020) .......................... 19

*Public Employees for Envtl. Responsibility v. U.S. EPA*, No. 18-cv-2219 (BAH), 2021 WL
2515007 (D.D.C. June 18, 2021) ....................................................................................... 17

*Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194 (D.D.C. 2007) ....... *passim*

*Skinner v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 12-5319, 2013 WL 3367431 (D.C. Cir. May 31, 2013) ....................................................... 23

*Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16 (D.D.C. 2011)........................................ 16

*Telematch, Inc. v. U.S. Dep't Agric.*, 45 F.4th 343 (D.C. Cir. 2022) ........................................ 18

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777 (2021) ................................. 10, 15

**RULES**

5 U.S.C. § 552(a)(8)(A) ............................................................................................................ 20

5 U.S.C. § 552(b) .................................................................................................................. 8, 9, 17

Fed. R. Civ. P. 26(b)(3)............................................................................................................. 12

Fed. R. Civ. P. 56(a) .................................................................................................................. 6

**OTHER AUTHORITIES**

*Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (Apr. 5, 2022), https://www.sec.gov/news/statement/commission-statement-relating-certain-administrative-adjudications....................................................... 1, 13

Letter from the Solicitor General, *SEC v. Cochran*, No. 21-1239 (S. Ct. Apr. 8, 2022), (*available at* https://www.supremecourt.gov/DocketPDF/21/21-1239/220641/20220408165202974_Letter%2021-1239%20final.pdf).................................... 13

Notice of Supplemental Authorities, Doc. 00516268389, *Jarkesy v. SEC*, No. 20-61007 (5th Cir. Apr. 5, 2022) ....................................................................................................................... 13

*SEC Enforcement Staff Accessed Adjudicatory Documents in Midst of Administrative Proceedings*, NCLA (Apr. 6, 2022), https://nclalegal.org/2022/04/sec-enforcement-staff-accessed-adjudicatory-documents-in-midst-of-administrative-proceedings ............................ 14

*Second Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (June 2, 2023), https://www.sec.gov/news/statement/second-commission-statement-relating-certain-administrative-adjudications ............................. *passim*

## I.     __INTRODUCTION__

Defendant U.S. Securities and Exchange Commission ("SEC") moves for summary judgment concerning the Freedom of Information Act ("FOIA") request at issue in this litigation. Summary judgment is appropriate here because there is no genuine dispute of material facts concerning Plaintiff's FOIA request.  The SEC has responded fully to Plaintiff's narrowed FOIA request and appropriately withheld records under FOIA Exemptions 5 and 6.

Accordingly, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment.

## II.     __STATEMENT OF FACTS__[1]

On April 5, 2022, the SEC issued a statement explaining that it had "identified a control deficiency related to the separation of its enforcement and adjudicatory functions within its system for administrative adjudications." *Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (Apr. 5, 2022), https://www.sec.gov/news/statement/commission-statement-relating-certain-administrative-adjudications ("April 5, 2022 Statement").  The SEC said that it had "commence[d] a comprehensive internal review to assess the scope and potential impact of the issue" and that it was "releasing the findings of that review as it relates to two adjudicatory matters currently in litigation in federal court." *Id.*  The statement describes the internal review and says that it is "being conducted by experienced investigative staff from the Division of Examinations under the supervision of the Commission's General Counsel." *Id.*  The statement also describes the role of a consulting firm in the internal review:

---

[1] The SEC's Statement of Material Facts in Support of the SEC's Motion for Summary Judgment is referred to herein as "SMF."  The Declaration of Mark Tallarico is referred to herein as "Tallarico Decl."  The Declaration of Lizzette Katilius is referred to herein as "Katilius Decl."

> To support the internal review, the Office of the General Counsel retained the Berkeley Research Group, LLC ("BRG"), a consulting firm with staff that includes a team of experienced investigators and forensic analysts.  Together, the internal team and BRG staff are in the process of performing a comprehensive review of the facts surrounding the control deficiency and assessing its potential impact on administrative adjudicatory matters. BRG is also conducting an independent forensic analysis to determine the scope and potential impact of the control deficiency. That analysis includes a detailed review of the Office of the Secretary databases in which the Adjudication memoranda were stored and the Enforcement databases into which some of those memoranda were uploaded. BRG is also conducting an analysis of access logs for the various systems.

*Id.*  The majority of the statement discusses the impact of the control deficiency on two administrative proceedings that had related matters pending in federal court, *SEC v. Cochran*, No. 21-1239 (S. Ct.), and *Jarkesy v. SEC*, No. 20-61007 (5th Cir.).  *Id.*  The statement concludes by stating that "[t]he review team will continue to assess the remaining affected adjudicatory matters, and we will release those findings as soon as we are able to do so."  *Id.*

On July 12, 2022, Plaintiff submitted a FOIA request to the SEC seeking "[c]opies of certain records and documents of the Commission related to its April 5, 2022 statement regarding an identified 'control deficiency' within the Commission's system for administrative adjudications."  SMF ¶ 1.  Plaintiff's FOIA request specified that it was seeking documents "regarding the following occurrences":

1. The Commission's discovery of the deficiencies that allowed enforcement personnel to access the administrative adjudications system and documents of the Commission's Administrative Law Judges ('ALJs') and their staff.

2. All instances in which enforcement personnel accessed, or could have accessed, documents stored in the administrative adjudications system, including a list and/or names of all cases in which enforcement personnel accessed or could have accessed said system as well as the documents in every such case improperly accessed by enforcement personnel.

3. The Commission's determinations regarding the remedial measures that should be taken to address deficiencies that allowed enforcement personnel to access the administrative adjudications system.

4. The Commission's determination that 'access to the Adjudication memoranda would not have affected any Enforcement filings' in the following cases:

    a. *David S. Hall, P.C. d/b/a The Hall Group CPAs, David S. Hall, CPA, Michelle L. Helterbran Cochran, CPA, and Susan A. Cisneros*, Admin. Proc. 3-17228; *SEC v. Cochran*, No. 21- 1239 (S. Ct.); and

    b. *John Thomas Capital Mgmt. Grp. LLC d/b/a Patriot28 LLC, and George R. Jarkesy Jr.*, Admin. Proc. 3-15255; *Jarkesy v. SEC*, No. 20-61007 (5th Cir. May 18, 2022).

5. The Commission's findings regarding the effects of the control deficiency on all other cases in which the Commission identified that enforcement personnel accessed, or could have accessed the administrative adjudications system.

6. The decision of the Commission and its Office of the General Counsel to hire Berkley Research Group, LLC ('BRG'), a private consulting firm, to support the Commission's internal review of the control deficiency and the contract bid request, if any

7. Any reports, memoranda, or communications produced by BRG related to their review of the control deficiency

8. Copies of all contracts, including bid requests and scope of works, with BRG for the relevant time period.

9. The involvement of the Commission's Office of Inspector General ('OIG') in the Commission's discovery and remedy of the control deficiency and the OIG's subsequent findings, if any.

10. The Commission's determination to issue the April 5, 2022 statement, the pending report referenced therein, and any future actions the Commission plans to take regarding control deficiencies between the Adjudicatory and Enforcement Divisions.

*Id*.

On January 18, 2023, the FOIA Office issued an interim partial response to Plaintiff's FOIA request and released to Plaintiff 33 pages of records.  SMF ¶5.  The FOIA Office redacted the records in part under FOIA Exemptions 4 and 6, 5 U.S.C. § 552(b)(4) and (6).  *Id*.  In its response, the FOIA Office explained that it would address sub-part 10 of the FOIA request in three parts.  *Id*.  The FOIA Office further explained that its interim partial response addressed Plaintiff's FOIA request sub-parts 2, 5, 8, 9, 10(b), and 10(c).  *Id*.

On March 22, 2023, the FOIA Office sent a letter to the FOIA requester informing it that, among other things, the SEC had identified approximately 3,700 records, consisting of approximately 51,700 pages, that may be responsive to the remaining seven sub-parts of the FOIA request (items 1, 3, 4(a) and (b), 6, 7, and 10(a)).  SMF ¶7.  The letter also stated that, because the records potentially responsive to this request are voluminous, the FOIA Office would process them in the FOIA Office's Complex track.  *Id.*  The letter asked that, if Plaintiff was still interested in having the remaining sub-parts of the request processed, Plaintiff should contact the FOIA Office and identify the records that should be placed in the Complex track.  *Id.*

In March, April, and May 2023, the SEC's counsel and Plaintiff's counsel discussed ways of narrowing the remaining seven sub-parts of Plaintiff's FOIA request (items 1, 3, 4(a) and (b), 6, 7, and 10(a)).  SMF ¶8.  The parties ultimately agreed that the SEC would process two categories of records instead of those seven sub-parts: (1) the report or reports prepared by Berkeley Research Group (BRG), with all supporting documents, interviews, statements etc. ("First Category"), and (2) the first page of the Order Instituting Proceedings (a public document) of every administrative proceeding in which the "control deficiency" occurred ("Second Category").  *Id.*; *see also* ECF No. 15 at 1-2.

On June 23, 2023, the FOIA Office issued a response to the First Category and released to Plaintiff 55 pages of records.  SMF ¶9.  The records were redacted in part under FOIA Exemptions 5 and 6, 5 U.S.C. § 552(b)(5) and (6).  *Id.*  The FOIA Office also informed Plaintiff that it was withholding 1,835 pages of records in full pursuant to FOIA Exemptions 5 and 6.  *Id.* The documents are all emails between SEC staff and SEC contractors about the SEC's internal review related to the control deficiency issue, and they contain discussions about conducting the internal review.  *Id.*; Ex. 1.  Many of the emails have attachments with forensic data generated by

BRG for use in the internal review.  *Id.*  One email chain includes consultative discussions about a draft Commission statement and attaches the draft statement.  *Id.*; Ex. 1 at 13.

For the Second Category, the SEC initially informed Plaintiff that it was withholding all the requested documents under Exemption 5.  SMF ¶10.  However, on June 2, 2023, the SEC issued a second statement regarding the control deficiency related to the separation of the SEC's enforcement and adjudicatory functions.  *See Second Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (June 2, 2023), https://www.sec.gov/news/statement/second-commission-statement-relating-certain-administrative-adjudications ("Second Statement").  The Second Statement and its five exhibits provide, among other things, additional information about *Cochran*, *Jarkesy*, twenty-eight additional "Affected Matters" that were pending before the Commission, and sixty-one then-pending matters encompassed by eight "Omnibus Memoranda."  *Id.*  The Second Statement cites and contains links to the Orders Instituting Proceedings for each of the twenty-eight "Affected Matters," and Exhibit 5 contains links to the electronic dockets for the sixty-one matters it describes.  *Id.*

On June 13, 2023, the SEC's counsel emailed Plaintiff's counsel to inform them that the Second Statement allowed Plaintiff to access the Orders Instituting Proceedings that it was seeking in its Second Category.  SMF ¶12.  The SEC's counsel stated that by citing and providing links to the Orders Instituting Proceedings and electronic dockets in the Second Statement and its accompanying exhibits, the SEC had provided all documents responsive to the Second Category.  *Id.*  Plaintiff's counsel responded that Plaintiff also sought information about whether any closed, settled, or otherwise disposed-of matters were affected by the control deficiency.  *Id.*  The SEC's counsel responded that the SEC had provided responsive materials

for every administrative proceeding in which it had made a determination that one or more

Adjudication memoranda were accessed by Enforcement staff. *Id.* The SEC's counsel further

stated that to the extent that Plaintiff sought "the first page of the Order Instituting Proceedings"

for additional administrative proceedings, such a request would be an improper FOIA request

because it would be asking the SEC to conduct further analysis to determine whether, and in

which of those administrative proceedings, Enforcement staff accessed adjudication memoranda.

*Id.*

### III.   PROCEDURAL BACKGROUND

On November 23, 2022, Plaintiff filed the complaint in this lawsuit concerning its FOIA

request. *See* ECF No. 1; SMF ¶2. On January 11, 2023, Plaintiff filed an amended complaint.

*See* ECF No. 7; SMF ¶4.

The parties agreed that, on summary judgment, the issue to be resolved is the SEC's

withholding of information from records responsive to the two categories of records that the

parties agreed the SEC would process after the FOIA Office notified Plaintiff that its request was

too voluminous to process outside of the Complex track ((1) BRG reports and supporting

documents, and (2) the first page of the Order Instituting Proceedings of every administrative

proceeding in which the "control deficiency" occurred). ECF No. 15 at 2; SMF ¶¶8, 15. In light

of the parties' subsequent discussions about the Second Category, the SEC is also addressing

whether the Commission has provided a complete response to the Second Category. SMF ¶15.

### IV.   ARGUMENT

Summary judgment is warranted where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). Most FOIA cases are resolved on motions for summary judgment. *Clemente v.*

*FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585, at *1 (D.D.C. Nov. 21, 2022) A party is "entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record that it has located has either been produced to the plaintiff or is exempt from disclosure." *Miller v. U.S. DOJ*, 872 F. Supp. 2d 12, 18 (D.D.C. 2012).

To demonstrate its entitlement to summary judgment, "[a]n agency may submit sufficiently detailed affidavits or declarations, a Vaughn index of the withheld documents, or both, to demonstrate that [it] has analyzed carefully any material withheld and provided sufficient information as to the applicability of an exemption." *Clemente*, 2022 WL 17092585, at *2 (internal quotations omitted). The SEC "bears the burden to show that the claimed exemptions apply." *Id.* The Court may accept as true the factual assertions in the SEC's declarations "unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary." *Media Research Ctr. v. U.S. DOJ*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011). "The Court may grant summary judgment based solely on the agency's declarations if neither record evidence nor evidence of the agency's bad faith contradicts them." *Greenspan v. Bd. of Governors of the Fed. Rsrv. Sys.*, No. 1:21-cv-01968 (TNM), 2022 WL 17356879, at *2 (D.D.C. Dec. 1, 2022). An agency's declarations "receive a presumption of good faith." *Id.* (internal quotations omitted).

When addressing a motion for summary judgment, the Court "is to strike a balance between adequate review and respecting an agency's expertise and, accordingly, should not overstep the proper limits of the judicial role in FOIA review." *Dillon v. U.S. DOJ*, 444 F. Supp. 3d 67, 83 (D.D.C. 2020) (internal quotations omitted).

**A.  Summary judgment is appropriate because no material facts are in dispute.**

"FOIA cases do not ordinarily involve disputed facts."  *Codrea v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 21-2201 (RC), 2022 WL 4182189, at *3 (D.D.C. Sept. 13, 2022).  Like most FOIA cases, the only remaining dispute in this case is legal in nature, namely whether the SEC permissibly withheld records responsive to Plaintiff's First Category and whether the SEC has fully responded to Plaintiff's Second Category.  *See* SMF ¶15; ECF No. 15 at 2.  Summary judgment is warranted because the SEC "has fully discharged its obligations under the FOIA," even "after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester."  *Cause of Action Inst. v. U.S. DOJ*, 282 F. Supp. 3d 66, 72 (D.D.C. 2017) (internal quotations omitted).

**B.  The SEC properly withheld information under FOIA Exemptions 5 and 6 in responding to Plaintiff's First Category.**

**1.  Agencies can withhold exempt information when responding to FOIA requests.**

Though under the FOIA an agency must make certain government records available to the public upon proper request, the FOIA contemplates that some information may be kept from the public, as described in the FOIA's nine enumerated exemptions allowing the government to withhold documents or portions of documents.  *See* 5 U.S.C. § 552(b)(1)-(9); *Cause of Action Inst. v. U.S. DOJ*, 513 F. Supp. 3d 116, 123 (D.D.C. 2021) (Nichols, J.) ("Congress recognized that the release of certain information may harm legitimate governmental or private interests.") (internal quotation omitted).  The agency bears the burden of justifying the withholding of information under an exemption.  *Greenspan*, 2022 WL 17356879, at *2.

In support of an exemption claimed under the FOIA, "an agency may rely on declarations describing the applicability of a FOIA exemption to information that the agency has withheld." *Id.* An agency's declarations support summary judgment if they "describe[] the justifications for withholding the information with specific detail" and "demonstrate[] that the information withheld logically falls within the claimed exemption." *ACLU v. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). "The Court may grant summary judgment based solely on the agency's declarations if neither record evidence nor evidence of the agency's bad faith contradicts them." *Greenspan*, 2022 WL 17356879, at *2. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *ACLU*, 628 F.3d at 619 (internal quotations omitted).

In addition to declarations, the SEC may rely on a *Vaughn* index to justify its withholdings. *Chavis v. U.S. DOJ*, No. 1:20-cv-00638 (TNM), 2021 WL 1668069, at *4 (D.D.C. Apr. 28, 2021); *Amiri v. NSF,* No. 1:20-cv-02006 (TNM), 2021 WL 4438910, at *5 (D.D.C. Sept. 28, 2021) ("[i]n FOIA cases, agencies typically provide their justifications for withholding information in a *Vaughn* index" which "must contain an adequate description of the records and a plain statement of the exemptions relied upon") (internal quotations omitted). Both the declarations and the *Vaughn* index have a presumption of good faith. *Chavis*, 2021 WL 1668069, at *4.

## 2. Exemption 5 allows agencies to withhold documents protected by the attorney work-product doctrine and the deliberative process privilege.

Exemption 5 exempts from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Communications are "intra-agency" if they "ha[ve] been

received by an agency, to assist it in the performance of its own functions, from a person acting

in a governmentally conferred capacity other than on behalf of another agency-*e.g.,* in a capacity

as an employee or consultant to the agency."  *Dep't of Interior v. Klamath Water Users*

*Protective Ass'n,* 532 U.S. 1, 9-10 (2001) (citation and quotation omitted); *see also McKinley v.*

*Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011) ("intra-agency"

includes "agency records containing comments solicited from nongovernmental parties"); *Gov't*

*Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 104 (D.D.C. 2010) ("[T]he

Supreme Court has implicitly recognized a consultant corollary that extends Exemption 5 to

cover records submitted by outside consultants to government agencies when those consultants

played essentially the same part in an agency's process of deliberation as documents prepared by

agency personnel might have done.") (internal quotations omitted). Courts have interpreted

Exemption 5 to cover "the privileges available to Government agencies in civil litigation," which

includes the attorney work-product doctrine and the deliberative process privilege.  *U.S. Fish &*

*Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021).

### 3.   The SEC properly determined that communications with BRG and General Dynamics were intra-agency communications.

For communications with persons who are not officers or employees of an agency to be

intra-agency, "'the consultant does not represent an interest of its own, or the interest of any

other client, when it advises the agency that hires it.'"  *McKinley*, 647 F.3d at 336 (quoting

*Klamath*, 532 U.S. at 11).  The consultant's "only obligations [must be] to truth and its sense of

what good judgment calls for, and in those respects the consultant functions just as an employee

would be expected to do." *Klamath*, 532 U.S. at 11.  An agency can satisfy this requirement by

providing evidence in an agency declaration that the agency solicited the advice or assistance of

a contractor and that the contractor's purpose was to provide that advice or assistance. *See Democracy Forward Found. v. Centers for Medicare & Medicaid Servs.*, No. CV 18-635 (JDB), 2020 WL 1508508, at *1 (D.D.C. March 30, 2020).

Communications with BRG are intra-agency because, as reflected in a contract between the SEC and BRG, the SEC retained BRG to support its internal review relating to the control deficiency. SMF ¶19. During the internal review, BRG contractors compiled forensic data and engaged in discussion with SEC staff as part of SEC staff's review of certain databases to assess the scope and potential impact of the SEC's control deficiency. *Id.* BRG conducted forensic analysis at the request of the SEC and to support the SEC's work. *Id.* BRG has no interest related to the SEC's control deficiency other than providing assistance pursuant to its contract with the SEC. *Id.*

Communications with General Dynamics staff are also intra-agency because the SEC retained General Dynamics to support the SEC's Office of Information Technology ("OIT"). SMF ¶20. During the internal review, General Dynamics contractors helped OIT staff provide information to BRG and the review team so that BRG could conduct its forensic analysis. *Id.* General Dynamics contractors performed this work at the request of OIT and to support the SEC's work. *Id.* General Dynamics was not retained to assist with the internal review and has no interest related to the SEC's control deficiency other than providing assistance to OIT pursuant to its contract with the SEC. *Id.*

### 4. The SEC properly withheld information under the attorney work-product doctrine.

The attorney work-product doctrine protects records prepared in anticipation of litigation "by or for another party or by or for that other party's representative (including the other party's

attorney, consultant, surety, indemnitor, insurer, or agent).” *McKinley*, 647 F.3d at 341 (internal quotations omitted); *see also* Fed. R. Civ. P. 26(b)(3) (codifying privilege).  For purposes of the attorney work-product doctrine, “[w]hile litigation need not be imminent or certain in order to satisfy the anticipation of litigation prong of the test, this circuit has held that at the very least some articulable claim, likely to lead to litigation, must have arisen, such that litigation was fairly foreseeable at the time the materials were prepared.” *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 75 (D.D.C. 2003) (internal quotations omitted).

As detailed in the *Vaughn* index, the SEC withheld information concerning its internal review of the control deficiency pursuant to the attorney work-product doctrine embedded in FOIA Exemption 5.  *See* Ex. 1; SMF ¶¶17-18.  All of the information the SEC withheld under Exemption 5 is attorney work-product.  SMF ¶18.  The internal review was conducted by SEC staff and contractors at the direction and under the supervision of SEC attorneys in OGC in anticipation of litigation involving Enforcement cases tied to the control deficiency.  *Id*.  During the internal review, BRG contractors compiled forensic data and engaged in discussion with SEC staff as part of SEC staff’s review of certain databases to assess the scope and potential impact of the SEC’s control deficiency.  *See* Ex. 1; SMF ¶19.  Courts have found that information from similar situations, including internal agency investigations, is appropriately withheld pursuant to the attorney work-product doctrine.  *See, e.g.*, *Judicial Watch, Inc. v. U.S. DOJ*, 806 F. App’x 5, 7 (D.C. Cir. 2020) (holding that DOJ “adequately demonstrated that the [FBI forms used by non-attorney agents] fit within the attorney work-product privilege” where forms obtained because of prospect of litigation and work conducted under attorney direction); *Hertzberg*, 273 F. Supp. 2d at 77-78 (protecting “statements of Forest Service employees taken by Forest Service investigators” because employees conducting investigation and preparing statements were “party

representatives" under Federal Rule of Civil Procedure 26(b)(3)); *Leopold v. U.S. DOJ*, 487 F.

Supp. 3d 1, 11-12 (D.D.C. 2020) (noting that "in the FOIA context, the District of Columbia

Circuit has long held that documents prepared by non-attorneys in anticipation of litigation may

also be protected by the privilege" and holding attorney work-product privilege applied to FBI

interview-related records prepared by law enforcement agents) (cleaned up).

The SEC's internal review at issue here was undertaken with an eye toward possible

litigation, as litigation related to or arising from the control deficiency was reasonably

foreseeable.  The control deficiency relates "to the separation of enforcement and adjudicatory

functions within the agency's system for administrative adjudication."  *See* Second Statement,

*supra*.  Specifically, "for a period of time, certain databases maintained by [the SEC's] Office of

the Secretary ('OS') were not configured to restrict access by staff from [the SEC's] Division of

Enforcement ('Enforcement') to memoranda drafted by staff from the Adjudication Group

('Adjudication') in [the SEC's] Office of the General Counsel ('OGC')."  *Id.*  Litigation relating

to the control deficiency was foreseeable at the time of the internal review because the SEC

recognized that parties in affected administrative proceedings might raise claims in the

administrative proceedings, in appeals from those proceedings, or in independent cases in federal

courts related to the control deficiency.  SMF ¶21.  Indeed, recognizing the connection to

ongoing litigation, following the issuance of the April 5, 2022 Statement, the Department of

Justice, which represents the SEC, submitted information regarding the control deficiency to the

courts in which the litigation referred to in the April 5, 2022 Statement was pending.[2]  As

---

[2] *See, e.g.,* Letter from the Solicitor General, *SEC v. Cochran*, No. 21-1239 (S. Ct. Apr. 8, 2022), (*available at* https://www.supremecourt.gov/DocketPDF/21/21-1239/220641/20220408165202974_Letter%2021-1239%20final.pdf); Notice of Supplemental Authorities, Doc. 00516268389, *Jarkesy v. SEC*, No. 20-61007 (5th Cir. Apr. 5, 2022).

Plaintiff represents Cochran in her case against the SEC, Plaintiff is well aware of the relevance of these matters to litigation.  *See SEC Enforcement Staff Accessed Adjudicatory Documents in Midst of Administrative Proceedings*, NCLA (Apr. 6, 2022), https://nclalegal.org/2022/04/sec-enforcement-staff-accessed-adjudicatory-documents-in-midst-of-administrative-proceedings.

Because the withheld information was created by SEC staff and contractors as part of an internal review led by OGC in reasonable anticipation of litigation, information about the internal review fits squarely within the attorney work-product doctrine embedded in Exemption 5 and was appropriately withheld.

### 5. The SEC properly withheld information under the deliberative process privilege.

The deliberative process privilege applies to material that is both "predecisional" and "deliberative."  *Amiri*, 2021 WL 4438910, at *6.  A record is "predecisional if the agency generated it before its final decision on a matter" and "deliberative if the agency prepared it to 'help the agency formulate its position.'"  *Clemente*, 2022 WL 17092585, at *5; *Elec. Frontier Found. v. U.S. DOJ*, 739 F.3d 1, 4 (D.C. Cir. 2014) (Exemption 5 "allows an agency to withhold 'all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be[.]'").

The deliberative process privilege protects "from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated."  *Competitive Enter. Inst. v. United States EPA*, 232 F. Supp. 3d 172, 184 (D.D.C. 2017) (internal quotations omitted).  The deliberative process privilege also "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the

policy of the agency." *Id.* (internal quotations omitted). "To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure." *Sierra Club*, 141 S. Ct. at 785. The privilege also "protects agencies from being 'forced to operate in a fishbowl.'" *Elec. Frontier Found.*, 739 F.3d at 7. The deliberative process privilege "calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Id.* (internal quotations omitted). "[C]ourts have allowed agencies to withhold factual information that is 'inextricably intertwined' with deliberative material." *Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 203 (D.D.C. Oct. 5, 2007), *report and recommendation adopted*, 520 F. Supp. 2d 194 (D.D.C. Nov. 8, 2007).

As detailed in the *Vaughn* Index, the SEC withheld information about its internal review of the control deficiency under the deliberative process privilege embedded in Exemption 5. *See* Ex. 1. The withheld records consist of pre-decisional discussion and analysis concerning the agency's review of the control deficiency. *See* Ex. 1; SMF ¶22. Specifically, the records reflect staff's deliberations concerning its review of the control deficiency prior to the agency's final findings about the control deficiency. *See* Ex. 1; SMF ¶¶19, 22 In these records, SEC staff and contractors compile and discuss forensic data used to assess the scope and potential impact of the SEC's control deficiency. *See id*. This analysis occurred prior to final agency decisions or findings concerning the internal review. *See id.* Courts have found that this type of discussion among agency staff and contractors about data is appropriately withheld pursuant to the deliberative process privilege. *Reliant*, 520 F. Supp. 2d at 204-06 (deliberative process privilege applied to draft reports about investigation, emails and other records with substantive discussion

of issues under investigation, and spreadsheets and tables analyzing raw data); *Center for Biological Diversity v. U.S. EPA*, 369 F. Supp. 3d 128, 138 (D.D.C. 2019) (finding that deliberative process privilege protected factual information "inextricably intertwined" with deliberative discussions because it was "selected, organized, and presented in such a way that requires 'the exercise of discretion and judgment calls,' and does not amount to an 'essentially technical' recitation of scientific data or other facts"); *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 465 (D.C. Cir. 2014) (concluding that deliberative process privilege protected internal draft agency history and noting that "the selection of the facts thought to be relevant" is part of deliberative process because "it necessarily involves policy-oriented judgment") (internal quotations omitted); *Elec. Privacy Info. Ctr. v. U.S. DOJ*, 320 F. Supp. 3d 110, 119 (D.D.C. 2018) ("The deliberative process privilege protects a compilation of factual material 'assembled through an exercise of judgment in extracting pertinent material from a vast number of documents for the benefit of an official called upon to take discretionary action.'"). Because the SEC's internal analysis pre-dated the SEC's final findings about the control deficiency and reflects deliberation about the internal review, the records were appropriately withheld under Exemption 5.

The SEC also withheld portions of an email that contained pre-decisional discussions concerning a draft of a Commission statement relating to the control deficiency, as well as the draft that was discussed. *See* Ex. 1 at 13; SMF ¶23. Specifically, the records reflect SEC staff's discussions, edits, and recommendations concerning the draft statement. *Id.* Courts have found that internal correspondence between agency staff about draft agency documents as well as the draft document itself are appropriately withheld pursuant to the deliberative process privilege. *See Techserve Alliance v. Napolitano*, 803 F. Supp. 2d 16, 27 (D.D.C. 2011) (D.C. "Circuit has

held that draft documents likely are to be protected under the deliberative process privilege because draft documents, by their very nature, are typically pre-decisional and deliberative.") (internal quotations omitted); *Lewis v. U.S. Dep't of Treasury*, No. 17-cv0943 (DLF), 2020 WL 1667656, at *7 (D.D.C. Apr. 3, 2020) (Exemption 5 applied to draft documents "prepared to help [agency] officials finalize the language in the agency's proposed rulemaking" that "contain[ed] comments and redline edits . . . reflect[ing] the give-and-take of the consultative process between [agency] officials regarding what material the final document should include") (cleaned up), *aff'd*, 851 F. App'x 214 (D.C. Cir. 2021); *ACLU v. CIA*, No. 1:18-cv-2784 (CJN), 2022 WL 306360, at *8 (D.D.C. Feb. 2, 2022) (Nichols, J.) ("draft documents, email exchanges, and preliminary communications in response to Senate, White House, and media inquiries" appropriately withheld under deliberative process privilege because they reflect agency's "'internal and confidential decision-making process'" and agency "did not treat the documents as final, but rather as preliminary versions subject to feedback and change"); *Public Employees for Envtl. Responsibility v. U.S. EPA*, No. 18-cv-2219 (BAH), 2021 WL 2515007, at *9-10 (D.D.C. June 18, 2021) (Exemption 5 protected version of agency assessment because it was identified as draft version, preceded final assessment, "contain[ed] redlines, indicating proposed changes, and comment bubbles" and "comprise[d] the agency's tentative selection and synthesis of facts and studies upon which to base its assessment").

### 6.   The SEC properly withheld information under Exemption 6.

The FOIA prevents disclosure of "personnel files and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  To withhold information under Exemption 6, an agency must first establish that the information is contained in personnel, medical, or "similar" files.  *See Reliant*, 520 F.

Supp. 2d at 207.  If the information meets that threshold, a court assesses whether disclosure would lead to a "clearly unwarranted invasion of personal privacy."  *See id*.  Specifically, "the court must undertake a balancing of the public interest in disclosure on the one side and the individual's interest in privacy on the other."  *Id.* (internal quotations omitted).

The records at issue here are in "similar files."  "The Supreme Court has held that Congress intended the words 'similar files' to be interpreted broadly."  *Reliant*, 520 F. Supp. 2d at 207.  Exemption 6 is not limited to personnel or medical files; it covers any "'detailed Government records on an individual which can be identified as applying to that individual.'"  *Gov't Accountability Project*, 699 F. Supp. 2d at 105 (quoting *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982)).  Exemption 6 also covers not just the files themselves, but also "bits of personal information, such as names and addresses."  *Telematch, Inc. v. U.S. Dep't Agric.*, 45 F.4th 343, 351 (D.C. Cir. 2022) (internal quotations omitted).  Because the SEC is withholding SEC staff and contractor email addresses and phone numbers as well as the names of SEC staff who either had access to the databases at issue in the control deficiency or were interviewed by the internal review team, the information is deemed to be in "similar files."  *See* Ex. 1; SMF ¶24.

Individuals have a privacy interest in this information.  Courts have consistently protected employee names and contact information under Exemption 6.  *See, e.g.*, *Davidson v. United States*, 264 F. Supp. 3d 97, 115 (D.D.C. 2017) (Exemption 6 covers personal information "the release of which would create a palpable threat to privacy") (internal quotation omitted), *aff'd*, 728 F. App'x 7 (D.C. Cir. 2018).  The privacy interest in names and contact information is substantial because individuals have a privacy interest in information that could lead to them being harassed if released.  *See, e.g.*, *id.* at 110, 115 (concluding individuals have substantial

privacy interest in their names and contact information where the agency withheld the information to avoid "unwanted attention for the employee"); *Nova Oculus Partners, LLC v. U.S. SEC*, 486 F. Supp. 3d 280, 290 (D.D.C. 2020) (SEC appropriately withheld under Exemption 6 names and contact information of SEC staff).  The only names withheld are of SEC staff who had access to the databases at issue in the control deficiency or who were interviewed during the review, and the potential for harassment exists from persons who may want to question or attack individuals they think may have acted improperly.  *See Horvath v. U.S. Secret Serv.*, 419 F. Supp. 3d 40, 47 (D.D.C. 2019) ("agents interviewed in the investigation have a substantial privacy interest in withholding information that would associate them with internal agency investigations and threatens to identify them as witnesses to alleged workplace misconduct") (cleaned up); *Cotton v. Adams*, 798 F. Supp. 22, 26 (D.D.C. 1992) ("individuals named as witnesses or as subjects of an investigation . . . have a discernible privacy interest in . . . avoiding the embarrassment and potential harassment that may result from public disclosure of their association with the Inspector General's inquiry") (internal citation omitted).

No public interest outweighs the privacy interests in the names and contact information the SEC withheld.  To overcome a privacy interest, it is the requester's obligation to articulate a sufficient and significant public interest.  *See Reliant*, 520 F. Supp. 2d at 207 ("If the requesting party cannot demonstrate a public interest in disclosure then the court will not order disclosure, because, as this Circuit has noted, 'something, even a modest privacy interest, outweighs nothing every time.'").  Under the FOIA, the only relevant public interest is whether disclosing the personal information would shed light on governmental activities or operations. *Davidson*, 264 F. Supp. 3d at 115-16.  "Information that reveals little or nothing about an agency's own conduct does not further the statutory purpose[.]"  *Id.* (internal quotations omitted).  Releasing contact

information and the names of people with access to the databases at issue in the control

deficiency or who were interviewed during the review would not shed light on the SEC's

activities or operations.  SMF ¶30.

The SEC properly withheld names and contact information under Exemption 6 to protect

the privacy interests of its employees and of its contractor's employees.

**7. The SEC conducted a segregability analysis and reasonably foresaw that disclosure of the withheld information would harm interests protected by Exemptions 5 and 6.**

Under the FOIA, an agency may withhold exempt information only if it "reasonably

foresees that disclosure would harm an interest protected by [a FOIA] exemption," "consider[s]

whether partial disclosure of information is possible," and "take[s] reasonable steps necessary to

segregate and release nonexempt information."  5 U.S.C. § 552(a)(8)(A).  "A record is not

reasonably segregable if 'exempt and nonexempt information are inextricably intertwined, such

that the excision of exempt information would impose significant costs on the agency and

produce an edited document with little informational value.'"  *Elec. Privacy Info. Ctr. v. FBI*,

No. 1:17-cv-00121 (TNM), 2018 WL 2324084, at *6 (D.D.C. May 22, 2018).  The SEC

"enjoy[s] 'a presumption that they complied with the obligation to disclose reasonably

segregable material.'"  *Id.*

SEC staff reviewed the records responsive to the First Category to determine whether any

portions of those records could be segregated for public disclosure.  SMF ¶25.  SEC staff have

provided all non-exempt information that could be segregated from exempt information.  *Id*.

With respect to information protected by the attorney work-product doctrine, courts have

recognized that "[i]f a document is fully protected as work product, then segregability is not required." *Judicial Watch, Inc. v. U.S. DOJ*, 432 F.3d 366, 371 (D.C. Cir. 2005).

SEC staff have also reviewed the records responsive to the First Category to determine if it is reasonably foreseeable that disclosure would harm an interest protected by one of the FOIA's statutory exemptions or the disclosure is prohibited by law.  SMF ¶26.  The SEC has disclosed all portions of documents that it reasonably foresees could be disclosed without causing harm.  *Id*.  Disclosure of the information relating to the SEC's internal review that the SEC is withholding under the attorney work-product doctrine would deprive the SEC of its ability to withhold any information in future litigation, and consequently would deprive SEC attorneys of a zone of privacy within which to weigh facts and evidence and evaluate how to handle future litigation.  SMF ¶29; *see Judicial Watch, Inc. v. United States Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 209 (D.D.C. 2010) ("privilege aims to protect the adversary trial process by providing attorneys a zone of privacy within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories").

Additionally, disclosure of the information relating to the SEC's internal review that the SEC is withholding under the deliberative process privilege would chill ongoing discussions about addressing the control deficiency the SEC identified as well as discussions about addressing future issues the SEC may face.  SMF ¶27.  Public release of these discussions would also likely deter SEC staff's future willingness to share ideas, recommendations, and preliminary thoughts on issues and matters before them.  *Id*.  These confidential discussions and the data generated from the discussions also formed the basis for advice conveyed to SEC officials who needed to decide what actions to take in light of the internal review.  *Id*.  If these documents were disclosed in response to FOIA requests, staff across the SEC would likely limit their discussions

and inhibit their candor in discussing issues relating to the control deficiency and other issues that may arise in the future. *Id*. Such chilling would make it more difficult for SEC leadership to obtain the advice necessary to efficiently and effectively address complex issues about its operations and would hamper comprehensive reviews designed to address and improve those issues. *Id*. Release of the discussions concerning the draft Commission statement, as well as the draft itself, would likely cause confusion to the public because these discussions and the draft statement contain deliberations about what the final statement should be and are not reflective of the publicly released statement. *Id*. Overall, disclosure would jeopardize the candid and comprehensive discussions that are essential for efficient and effective decision-making. SMF ¶28; *see Reliant*, 520 F. Supp. 2d at 204 (releasing documents related to factual investigation "would allow a reader to probe too deeply into the thought processes of the drafters and would have a chilling effect on communication between agency employees").

Finally, disclosure of information in which individuals have a privacy interest would create foreseeable harm by unnecessarily exposing personal information to the public and resulting in an unwarranted invasion of personal privacy to these individuals. SMF ¶30.

### C.  The SEC has not withheld any information from the Second Category.

Plaintiff's Second Category seeks "the first page of the Order Instituting Proceedings (a public document) of every administrative proceeding in which the 'control deficiency' occurred." SMF ¶8. Thus, instead of using the FOIA to seek documents that are not otherwise available to the public, Plaintiff is using the FOIA to seek information about the status and progress of the SEC's internal review. The release of the Second Statement and its associated exhibits provided Plaintiff with information about the Commission's findings about administrative proceedings impacted by the control deficiency. *See* Second Statement, *supra*.

Indeed, the exhibits contained links to Orders Instituting Proceedings and electronic dockets for the matters in which the Commission has determined that one or more SEC Adjudication memoranda were accessed by SEC Division of Enforcement staff.  *See id*.  By providing this information, the SEC has provided all documents responsive to the Second Category and has not withheld any information.  SMF ¶13.  As such, there is no dispute concerning the application of any FOIA exemptions.

Plaintiff informed the SEC that its position is that it can only agree that the SEC has satisfied the Second Category request if it receives information regarding closed, settled, or otherwise disposed of administrative proceedings affected by the control deficiency.  SMF ¶14. As such, Plaintiff claims that the SEC has not provided all responsive documents because it wants "the first page of the Order Instituting Proceedings" for additional administrative proceedings that were not addressed in the Second Statement and as to which the SEC has not determined that Adjudication memoranda were accessed by Division of Enforcement staff. Plaintiff's claim makes clear that instead of seeking specific documents, it is asking the SEC to conduct further analysis to determine whether, and in which administrative proceedings, Enforcement staff accessed adjudication memoranda.  Such a request would be an improper FOIA request because FOIA does not require agencies to "undertake research, analysis, and formulation of opinions."  *Hall & Assocs. v. U.S. EPA*, No. 16-5315, 2018 WL 1896493, at *2 (D.C. Cir. Apr. 9, 2018).  In addition, the request is not focused on obtaining records that exist but on having the SEC create records that do not exist.  Agencies do not have an obligation to create records to respond to FOIA requests.  *See Jarvis v. Comm'r, Soc. Sec. Admin.*, No. 18-5170, 2018 WL 6722401, at *1 (D.C. Cir. Dec. 18, 2018) ("[N]o duty to create statistical records in response to appellant's FOIA request.");  *Skinner v. Bureau of Alcohol, Tobacco, Firearms &*

*Explosives*, No. 12-5319, 2013 WL 3367431, at *1 (D.C. Cir. May 31, 2013) ("FOIA does not require federal agencies to create or obtain records").

Because a request for additional Orders Instituting Proceedings would be an improper FOIA request, Plaintiff has received all the information the SEC currently has that is responsive to its Second Category.

## V.    **CONCLUSION**

For the foregoing reasons, the SEC respectfully requests that the Court grant the SEC's motion for summary judgment.


Dated:  July 12, 2023                                    Respectfully submitted,

                                                         /s/ *Alexandra Verdi*
                                                         Alexandra Verdi (NY Reg. No. 5480934)
                                                         Office of the General Counsel
                                                         U.S. Securities and Exchange Commission
                                                         100 F Street, NE
                                                         Washington, D.C. 20549
                                                         Telephone: (202) 551-5057
                                                         Fax: (202) 772-9263
                                                         verdim@sec.gov

                                                         *Counsel for Defendant*
                                                         *U.S. Securities and Exchange Commission*