**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NEW CIVIL LIBERTIES ALLIANCE,

        Plaintiff,

      v.

SECURITIES AND EXCHANGE
COMMISSION,

        Defendant.

No. 22-cv-03567-CJN

**<u>REPLY MEMORANDUM IN SUPPORT OF</u>**
**<u>SEC'S MOTION FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     ARGUMENT .................................................................................................................. 1

    A.      The SEC properly withheld information under FOIA Exemptions 5 and 6 in
        responding to Plaintiff's First Category.................................................................. 1

        1.      Communications between SEC staff and BRG and General Dynamics
            contractors are intra-agency communications under Exemption 5............. 1

        2.      The SEC appropriately withheld information under the attorney work-
            product doctrine. ....................................................................................... 4

        3.      The SEC appropriately withheld information under the deliberative
            process privilege. ...................................................................................... 7

        4.      The SEC has not waived protection of the withheld records................... 10

        5.      The SEC properly withheld information under Exemption 6.................. 11

        6.      The SEC's *Vaughn* Index sufficiently describes the information withheld
            under the deliberative process privilege. .................................................. 14

        7.      The SEC sufficiently demonstrated the foreseeable harm that would occur
            should the withheld records be released. .................................................. 17

    B.      The SEC appropriately responded to Plaintiff's Second Category...................... 21

    C.      No material facts are in dispute. ......................................................................... 24

III.    CONCLUSION............................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Amiri v. NSF*, No. 1:20-cv-02006 (TNM), 2021 WL 4438910 (D.D.C. Sept. 28, 2021) ...... 17, 22

*Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*,

   370 F. Supp. 3d 116 (D.D.C. 2019) ........................................................................ 6

*Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55 (D.C. Cir. 2003)................................ 10

*Brown v. FBI*, 873 F. Supp. 2d 388 (D.D.C. 2012) ........................................................ 13

*Burke v. Inter-Con Sec. Sys., Inc.,* 926 F. Supp. 2d 352 (D.D.C. 2013) ...................................... 21

*Carr v. C.R. Bard, Inc.*, 297 F.R.D. 328 (N.D. Ohio 2014)........................................................ 11

*Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 45 F.4th 963 (D.C. Cir. 2022) ...... 9

*Clemente v. FBI*, No. 1:20-cv-1527 (TNM),

   2022 WL 17092585 (D.D.C. Nov. 21, 2022) .................................................... 17, 20

*Coastal Corp. v. Dep't of Energy*, 496 F. Supp. 57 (D. Del. 1980)................................................ 14

*Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 161 F. Supp. 3d 120 (D.D.C.) ............ 11

*Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83 (D.D.C. 2009)........................ 23

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) ..................... 2, 11

*EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959 (D.C. Cir. 1999)............................................... 5, 6

*Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157 (D.D.C. 2011).................... 9

*Elec. Privacy Info. Ctr. v. DHS*, 892 F. Supp. 2d 28 (D.D.C. 2012) ............................................ 4

*Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM),

   2018 WL 2324084 (D.D.C. May 22, 2018)........................................................ 22

*Elkem Metals Co. v. United States*, 24 C.I.T. 1395, 126 F. Supp. 2d 567 (2000) ....................... 16

*Energy Pol. Advocates v. U.S. Dep't of State*, No. 1:19-CV-03307 (TNM),

    2023 WL 4198200 (D.D.C. June 27, 2023) ........................................................................ 17, 19

*Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241 (4th Cir. 1994) ................................................................ 9

*FPL Group, Inc. v. IRS*, 698 F. Supp. 2d 66 (D.D.C. 2010) ....................................................... 10

*Free Enter. Fund v. PCAOB*, 561 U.S. 477 (2010) ..................................................................... 9

*Georgia v. U.S. Dep't of Justice*, No. 1:21-cv-03138 (TNM),

    2023 WL 2116375 (D.D.C. Feb. 20, 2023) ......................................................................... 2, 3

*Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97 (D.D.C. 2010) .............. 2

*Hall & Assocs. v. U.S. EPA*, 633 F. Supp. 3d 55 (D.D.C. 2022) ................................................. 16

*Hall & Assocs. v. U.S. EPA*, No. 19-1095 (RC), 2020 WL 4673411 (D.D.C. Aug. 12, 2020) .... 12

*Hennessey v. U.S. Agency for Int'l Dev.*, No. 97-1133, 1997 WL 537998 (4th Cir. 1997) ............ 9

*ICM Registry, LLC v. U.S. Dep't of Commerce*, No. 06-0949 (JR),

    2007 WL 1020748 (D.D.C. March 29, 2007) ....................................................................... 9

*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 391 F. Supp. 3d 43 (D.D.C. 2019) ......................... 6

*Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252 (D.D.C. 2004) ............................ 9

*Keeping Gov't Beholden, Inc. v. U.S. Dep't of Justice*, No. CV 17-1569,

    2021 WL 5918627 (D.D.C. Dec. 13, 2021) ........................................................................ 20

*Kleinert v. BLM*, 132 F. Supp. 3d 79 (D.D.C. 2015) .................................................................. 13

*Lawyers' Comm. for C.R. v. OMB*, No. 18-645 (EGS),

    2023 WL 3433978 (D.D.C. May 12, 2023) .............................................................. 16, 18, 19

*Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246 (D.D.C. 2005) .............................. 13

*Leopold v. U.S. Dep't of Justice*, 487 F. Supp. 3d 1 (D.D.C. 2020) ............................................ 11

*Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364 (D.C. Cir. 2020) ................................ 8, 18

*Machado Amadis v. U.S. Dep't of Justice*, 388 F. Supp. 3d 1 (D.D.C. 2019) ............................. 22

*McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331 (D.C. Cir. 2011).............. 2

*Mogenhan v. DHS*, No. 06-2045 (EGS), 2007 WL 2007502 (D.D.C. July 10, 2007) ................ 21

*Murray v. Fed. Bureau of Prisons*, 741 F. Supp. 2d 156 (D.D.C. 2010)...................................... 23

*Nat'l Inst. of Military Justice v. U.S. DOD*, 404 F. Supp. 2d 325 (D.D.C. 2005) ......................... 2

*Nat'l Student Legal Def. Network v. U.S. Dep't of Educ.*, No. 21-1923 (BAH),

2023 WL 4450579 (D.D.C. July 11, 2023)............................................................................. 10

*People for the Am. Way Found. v. U.S. Dep't of Educ.*,

516 F. Supp. 2d 28 (D.D.C. 2007) ................................................................................... 11, 14

*Prechtel v. FCC*, 330 F. Supp. 3d 320 (D.D.C. 2018).................................................................. 12

*Project on Gov't Oversight, Inc. v. DHS*, No. l:18- CV-2051-RCL,

2023 WL 2139380 (D.D.C. Feb. 21, 2023) .......................................................................... 20

*Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194 (D.D.C. 2007) ........ 13, 19

*Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021)...................... 20

*Santos v. DEA*, 357 F. Supp. 2d 33 (D.D.C. 2004)...................................................................... 22

*Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548 (D.C. Cir. 1994)................................................. 23

*United States v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010) ...................................................... 6

*Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975) ........................................................................ 9

*Waterman v. IRS*, 288 F. Supp. 3d 206 (D.D.C. 2018)................................................................ 12

*Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365 (D.C. Cir. 1980)............................................... 22

*Wilderness Soc. v. Dep't of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004) ........................................ 9

**OTHER AUTHORITIES**

*Second Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities

and Exchange Commission (June 2, 2023), https://www.sec.gov/news/statement/

second-commission-statement-relating-certainadministrative-adjudications ........................ 6, 8

## I.      INTRODUCTION

Defendant U.S. Securities and Exchange Commission ("SEC") submits this reply in further support of its motion for summary judgment.  In its Opposition, Plaintiff attempts to paint the SEC as "stonewall[ing]" Plaintiff's FOIA request.  *See* Opposition, ECF 17 ("Opp."), at 4. The record, however, shows that the SEC worked with Plaintiff to address and respond fully to Plaintiff's FOIA request, and Plaintiff's arguments are belied by the facts and the law.

Because the SEC has responded appropriately to Plaintiff's narrowed FOIA request and appropriately withheld records under FOIA Exemptions 5 and 6, the Court should grant the SEC's motion for summary judgment.

## II.     ARGUMENT

### A.  The SEC properly withheld information under FOIA Exemptions 5 and 6 in responding to Plaintiff's First Category.

The SEC properly withheld attorney work product, information reflecting predecisional deliberations, and information in which individuals have a privacy interest under FOIA Exemptions 5 and 6 from emails with government contractors.  *See* Memorandum, ECF 16-5 ("Memo"), at 8-22.

#### 1.   Communications between SEC staff and BRG and General Dynamics contractors are intra-agency communications under Exemption 5.

Plaintiff claims the SEC's communications with its contractors are not intra-agency communications but provides no support for that claim.  *See* Opp. at 19-22.

Plaintiff incorrectly argues that Supreme Court and D.C. Circuit precedent applying the consultant corollary to government contractors is not well-established law.  *See* Opp. at 19-20. In *Klamath*, the Supreme Court recognized that certain Courts of Appeals had adopted a consultant corollary to Exemption 5 and found that communications between agencies and outside consultants hired by agencies were intra-agency communications as long as the

1

consultant did not "represent an interest of its own, or the interest of any other client, when it advise[d] the agency that hire[d] it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9-11 (2001); *see also Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 104 (D.D.C. 2010) (citing *Klamath* and noting that "the Supreme Court has implicitly recognized a consultant corollary that extends Exemption 5 to cover records submitted by outside consultants to government agencies when those consultants played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might have done") (internal quotations omitted).  The D.C. Circuit and Courts within this Circuit have approved the use of the consultant corollary.  *See, e.g.*, *McKinley v. Bd. of Governors of the Fed. Reserve Sys.*, 647 F.3d 331, 336 (D.C. Cir. 2011) ("intra-agency" includes "agency records containing comments solicited from nongovernmental parties"); *Nat'l Inst. of Military Justice v. U.S. DOD*, 404 F. Supp. 2d 325, 343 (D.D.C. 2005) (citing *Klamath* and D.C. Circuit cases and noting that "[t]he Supreme Court has made clear that Exemption 5 protects not only inter-agency and intra-agency communications among employees, but also communications from outside consultants or other individuals hired or solicited by an agency for their views"), *aff'd*, 512 F.3d 677 (D.C. Cir. 2008).

Plaintiff points to one opinion in this district in support of its request that the Court "decline to recognize this purported 'corollary' to Exemption 5."  Opp. at 19, 20-21.  In that case, however, the Court did not reject the consultant corollary but rather applied "three [guiding] principles" to determine whether private parties and their lawyers were "consultants" under the consultant corollary.  *Georgia v. U.S. Dep't of Justice*, No. 1:21-cv-03138 (TNM), 2023 WL 2116375, at *5 (D.D.C. Feb. 20, 2023).  Specifically, the Court noted that, "following *Klamath*," to determine "whether a purported consultant [is] enough like the agency's own

personnel to justify calling their communications intra-agency," courts should consider "whether the agency presented evidence that the private parties are sufficiently disinterested to be analogous to government consultants," whether "the agency solicited the communications" from the private party, and whether "the agency seeks [the private party's] expertise." *Id.* (internal quotations omitted).  The Court concluded that the agency failed to show that the external parties "acted as disinterested parties in their communications with it." *Id.* at *5-6.  The Court explained that "nothing in the record suggests that [the agency] solicited the private entities for assistance in litigating its case against Georgia" and that the agency did not show that it received advice from experts. *Id.* at *8.

*Georgia* is factually inapposite to this case, and application of the principles used in *Georgia* shows that communications between the SEC and its contractors are intra-agency.  First, the SEC retained BRG and General Dynamics "to support its internal review relating to the control deficiency" and "to support the SEC's Office of Information Technology ('OIT')."  SMF ¶¶19, 20.  Neither contractor has any "interest related to the SEC's control deficiency other than" providing assistance pursuant to contracts with the SEC.  *Id.*  Unlike the "consultants" in *Georgia*, BRG and General Dynamics "are not self-interested" and "have [no] skin in the game" in connection with their work for the SEC.  *Georgia*, 2023 WL 2116375, at *5, 6.  Second, the SEC solicited and retained BRG and General Dynamics to support the SEC's work.  SMF ¶¶19, 20.  Third, the SEC sought the expertise of BRG and General Dynamics, specifically BRG's ability to conduct forensic analysis and General Dynamics' ability to support OIT staff. *See id.*

Plaintiff argues that even if the consultant corollary is based on law, it does not apply here because BRG and General Dynamics consultants were somehow "not proper" consultants (apparently because the SEC compensated BRG for its work) and the SEC's Office of Inspector

General should have conducted an investigation.  *See* Opp. at 5, 14, 15, 20, 21-22; ECF 17-1 at ¶30.  Plaintiff points to nothing that suggests that consultants cannot be deemed disinterested if they have an interest in entering into additional contracts with an agency.  The relevant consideration is whether a consultant has an interest in the underlying issue, and Plaintiff points to no evidence that BRG or General Dynamics has any interest in the control deficiency issue. *Elec. Privacy Info. Ctr. v. DHS*, 892 F. Supp. 2d 28, 44-46 (D.D.C. 2012) (consultant corollary applied where agency's consultants were "bound in contract to provide information and analysis").  Similarly, Plaintiff's argument regarding the Inspector General is an effort to insert an irrelevant issue into this FOIA case as the relevant fact is that communications with government contractors are at issue, not whether the SEC's Office of the General Counsel or Office of Inspector General should have conducted the internal review.  While the issue of who should conduct internal reviews is irrelevant, it bears noting that Plaintiff does not identify any provision of the Inspector General Act, 5 U.S.C. § 401 *et seq*., or any other law that would preclude the SEC's Office of the General Counsel from conducting the internal review here in anticipation of litigation.  *See* Opp. at 5, 22, 24; ECF 17-1 at ¶19.

Because BRG and General Dynamics served as disinterested experts that provided assistance at the SEC's request, communications between SEC staff and BRG and General Dynamics staff are intra-agency.  *See* Memo at 10-11.

## 2.  The SEC appropriately withheld information under the attorney work-product doctrine.

Contrary to Plaintiff's incorrect statement that the SEC cites the attorney work-product doctrine in the *Vaughn* Index only "occasionally" (Opp. at 14-15), the SEC asserts that the attorney work-product doctrine protects all withheld material from the First Category (*see* ECF 16-4 (citing attorney work-product doctrine for each withheld record)).

Plaintiff argues that the SEC has failed to establish that the attorney work-product doctrine applies to the withheld information because it was not "prepared or obtained because of the prospect of litigation." Opp. at 18-19 (internal quotations omitted). Without any evidence, Plaintiff claims that the SEC would have conducted a review of the control deficiency even if it did not fear being sued. *Id*. at 19.

As a threshold matter, Plaintiff confesses that Michelle Cochran, for whom Plaintiff "had served as counsel," *had planned to "file a complaint in district court"* before the SEC dismissed her administrative case in June 2023. Opp. at 4, 6 (emphasis added); ECF 17-1 at ¶21 (admitting "SEC anticipated facing legal consequences"). Thus, Plaintiff's own briefing shows the SEC had good reason to address the control deficiency issues in "anticipation of litigation involving Enforcement cases tied to the control deficiency." SMF ¶18. Plaintiff's only argument is that the SEC would have taken the same steps it took in reviewing the control deficiency if it had not anticipated litigating issues related to the control deficiency. *See* Opp. at 18-19. Plaintiff points to no facts to support that position. *See id.* Plaintiff provides no explanation of why a detailed analysis of the control deficiency in specific cases would have been necessary if the SEC did not anticipate needing to address litigation relating to those issues. *See id.*

Plaintiff's own cited cases undermine its assumption that reviews that relate to both operations issues and litigation are not work product. Indeed, the cited cases demonstrate that the attorney work-product doctrine applies here even where the withheld records were generated both because of the prospect of litigation and to address matters arising in the ordinary course of business. *See EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 968-69 (D.C. Cir. 1999) (report prepared by counsel who conducted investigation covered by attorney work-product doctrine "because [respondent] feared litigation" and court noted that "even if [respondent undertook its

investigation in ordinary course of business], [petitioner's] recharacterization of [respondent's] motivation does nothing to undermine [respondent's] contention that it genuinely feared litigation") (Opp. at 18); *United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010) ("document produced during an audit" could "contain protected work-product material even though it serves multiple purposes, so long as the protected material was prepared because of the prospect of litigation") (Opp. at 18, 19).  Additionally, the courts in three of Plaintiff's cited cases found the records at issue were covered by the attorney work-product doctrine.  *See EEOC*, 186 F.3d at 960 ("entire [record at issue was] fully protected by the work product privilege") (Opp. at 18); *Animal Welfare Inst. v. Nat'l Oceanic & Atmospheric Admin.*, 370 F. Supp. 3d 116, 138 (D.D.C. 2019) ("draft memorandum was produced in anticipation of litigation and is privileged under the work-product doctrine") (Opp. at 18-19); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 391 F. Supp. 3d 43, 53 (D.D.C. 2019) ("records exempt from FOIA release as attorney work product under Exemption 5") (Opp. at 18).

The SEC retained BRG to support its internal review relating to the control deficiency because "the SEC recognized that parties in affected administrative proceedings might raise claims in the administrative proceedings, in appeals from those proceedings, or in independent cases in federal courts related to the control deficiency."  SMF ¶¶19, 21.  Indeed, the SEC relied on BRG contractors to compile forensic data and perform analyses of databases and access logs. SMF ¶19; *Second Commission Statement Relating to Certain Administrative Adjudications*, U.S. Securities and Exchange Commission (June 2, 2023), https://www.sec.gov/news/statement/ second-commission-statement-relating-certainadministrative-adjudications ("Second Statement")*.*  Plaintiff's revelation that it contemplated litigation further underscores the SEC's anticipation that suits would be filed due to the control deficiency.

Because the First Category records were generated during the SEC's internal review undertaken in the context of foreseeable litigation, the attorney-work product doctrine applies to those records. *See* Memo at 11-14.

### 3. The SEC appropriately withheld information under the deliberative process privilege.

Plaintiff focuses its objection to the SEC's withholdings under the deliberative process privilege on the email correspondence between SEC staff and BRG contractors concerning their work on the internal review of the control deficiency. *See* Opp. at 15-18. Plaintiff does not address the applicability of the deliberative process privilege to the discussions about and draft of a Commission statement relating to the control deficiency. *See* Memo at 16-17.[1]

Plaintiff insists incorrectly that the SEC did not identify "the 'recommenders' . . . inside or outside the agency [and] what the relevant final agency decision was." Opp. at 16, 17; *see also* Opp. at 17 (arguing that SEC did not "tie the withheld records to a decision-making process"). The SEC, however, identified the deliberating individuals as "SEC staff," "BRG contracting staff," and the SEC's OGC staff. ECF 16-4. As discussed *infra* at II.A.6, the SEC properly identified the deliberating individuals and decisionmaking process.

Plaintiff suggests that issues relating to the control deficiency are not policy issues protected by the deliberative process privilege. *See, e.g.*, Opp. at 16 ("[m]ere reporting of forensic irregularities," "mere topic such as a 'control deficiency,'" SEC decisions about control deficiency "too trivial"). The information withheld from the First Category, however, is related to significant policy issues about continuing to litigate any administrative proceedings affected by the control deficiency, and the withheld information is pre-decisional and deliberative

---

[1] Though Plaintiff briefly argues that the SEC "inherently has hidden factual and nondeliberative material from view" (Opp. at 14), Plaintiff provides no support for that position (*see* Memo at 15-16 (factual material "inextricably intertwined" in deliberations)).

because requests from SEC staff for various categories of data and discussions of the SEC's

requests reflects deliberations of SEC staff about what to focus on and how to conduct the

internal review.  As detailed in the *Vaughn* Index, during the SEC's internal review of the control

deficiency, SEC staff and contractors discussed what forensic data could and should be compiled

to assess the scope and potential impact of the SEC's control deficiency.  *See* ECF 16-4; Memo

at 15.  This deliberation took place prior to the SEC's final decisions and findings concerning the

internal review.  *Id.*  The *Vaughn* Index shows that SEC staff and contractors discussed issues

related to data.  *See, e.g.*, ECF 16-4 at 1 ("information about a review of certain databases"

withheld), 2 ("discussions concerning staff's internal review" and "forensic data generated by

BRG staff" withheld), 13 ("discussions concerning a draft of a Commission statement" and

"draft" itself withheld).  The internal review did not involve simply gathering readily available

facts.  Rather, "to assess the scope and potential impact of the control deficiency," the SEC

instituted a "comprehensive," time intensive review conducted by "experienced investigative

staff from the Division of Examinations under the supervision of the Commission's General

Counsel" as well as "experienced investigators and forensic analysts" at BRG.  *See* Second

Statement, *supra*.  The consultative discussions and analysis during that review led to the SEC's

final findings as reflected in the Second Statement.  *See* ECF 16-4; SMF ¶¶19, 22.  Those final

findings in turn resulted in the SEC's policy decisions about whether to continue to litigate

administrative proceedings affected by the control deficiency.  *See* Second Statement, *supra*; *see

also* Opp. at 6 (SEC dismissed certain administrative proceedings).  Courts have approved

agencies' withholding of this type of information.  *See* Memo at 15-16.

Plaintiff relies on cases that are inapposite, out of circuit, and/or support the granting of

summary judgment to the agency.  *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370

(D.C. Cir. 2020) (granting summary judgment to agency and finding Exemption 5 applied to

"'evaluations, recommendations, discussions, and analysis which are prepared for senior-level

review and decisionmaking'") (Opp. at 15); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 483-84

(2010) (addressing presidential "ability to remove a principal officer," not any issues under

FOIA) (Opp. at 16); *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 45 F.4th 963,

977, 979 (D.C. Cir. 2022) (emphasizing "unique circumstances of" case in which agency

"[sought] to rely on a new legal theory justifying [Exemption 5] withholding" that it "never

presented to the district court") (Opp. at 16, 17); *Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241, 1244,

1250 (4th Cir. 1994) (agency withheld all contested records in full and, despite court order, did

not identify authors or recipients of records and did not identify their "relationships to the

decisionmaking process") (Opp. at 16); *Vaughn v. Rosen*, 523 F.2d 1136, 1145 (D.C. Cir. 1975)

(reports at issue were "'final objective analyses of agency performance under existing policy'")

(Opp. at 16); *Hennessey v. U.S. Agency for Int'l Dev.*, No. 97-1133, 1997 WL 537998, at *5 (4th

Cir. 1997) (report at issue was "final," "seemingly entirely factual in character," and "prepared

with the expectation that it would be shared with the very party from whom the government now

attempts to withhold the document") (Opp. at 16); *ICM Registry, LLC v. U.S. Dep't of

Commerce*, No. 06-0949 (JR), 2007 WL 1020748, at *6 (D.D.C. March 29, 2007) (deliberative

process privilege did not apply where "government's submissions fail to specify the deliberative

process reflected in these documents") (Opp. at 17); *Wilderness Soc. v. Dep't of Interior*, 344 F.

Supp. 2d 1, 12-13 (D.D.C. 2004) (agency did not identify specific "wilderness issues") (Opp. at

17); *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 264 (D.D.C. 2004) (agency

did "not identify specific final decisions or decisionmaking processes to which the documents

contributed") (Opp. at 17); *Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d 157,

168-69 (D.D.C. 2011) (descriptions "fail[ed] to identify a specific deliberative process to which the withheld email messages contributed" and role messages played) (Opp. at 17); *FPL Group, Inc. v. IRS*, 698 F. Supp. 2d 66, 90 (D.D.C. 2010) (agency "too vaguely described" certain records) (Opp. at 18).

### 4.   The SEC has not waived protection of the withheld records.

Plaintiff argues that the SEC "voluntarily waived the protection of Exemption 5 by sharing the underlying documents with its favored vendors and issuing press releases linking to selected records."  Opp. at 22-24.  "The D.C. Circuit has made clear that disclosure to a third party does not waive [work product protection] unless such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary, and waiver would occur . . . only if the disclosure substantially increases the possibility of an opposing party obtaining the information."  *Nat'l Student Legal Def. Network v. U.S. Dep't of Educ.*, No. 21-1923 (BAH), 2023 WL 4450579, at *7 (D.D.C. July 11, 2023) (internal quotations omitted).  There is no evidence that the SEC shared the withheld records with anyone other than SEC staff and government contractors.  As discussed above, the withheld records consist of emails and records generated during the SEC's internal review, and, under the consultant corollary, those communications are intra-agency.  *See supra* at II.A.1.

Further, though Plaintiff asserts that the SEC released the withheld records "to the public by way of a press release" (Opp. at 23), Plaintiff has not fulfilled its burden to establish waiver by showing evidence that information from the withheld forensic analysis and related discussion from the internal review is in the public domain.  *See Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 60-61 (D.C. Cir. 2003) (no waiver where plaintiff "made no *specific* showing that any of the . . . disclosures revealed information that is 'as specific as' and 'matches' that

included in the [withheld material]") (emphasis in original); *Leopold v. U.S. Dep't of Justice*, 487 F. Supp. 3d 1, 13 (D.D.C. 2020) (rejecting argument that agency waived work product privilege "with respect to much of [its] redactions because [agency] officially acknowledged [the redacted information] in [public] Report" and noting that "the fact that information exists in some form in the public domain does not necessarily mean that official disclosure will not cause harm cognizable under a FOIA exemption") (internal quotations omitted).

Only one of Plaintiff's cited cases addresses waiver, and all of Plaintiff's cases are distinguishable from the present circumstances.  Indeed, Plaintiff essentially repackages its baseless argument that correspondence between SEC staff and its contractors is not privileged. *See Klamath*, 532 U.S. at 4 (waiver not at issue but rather whether records were exempt from disclosure) (Opp. at 22); *People for the Am. Way Found. v. U.S. Dep't of Educ.*, 516 F. Supp. 2d 28, 41-42 (D.D.C. 2007) (declining to address Plaintiff's waiver arguments and noting that agency admitted to not disclosing all parties to withheld communications) (Opp. at 22-23); *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 161 F. Supp. 3d 120, 134 (D.D.C.) (waiver not at issue and determining that records between agency and professor whose opinion agency sought were not intra-agency because professor "had a professional and reputational stake in [agency's] decision"), *modified*, 185 F. Supp. 3d 26 (D.D.C. 2016) (Opp. at 23); *Carr v. C.R. Bard, Inc.*, 297 F.R.D. 328, 336 (N.D. Ohio 2014) (in non-FOIA case, court concluded that record at issue was work product, there was no waiver of that protection, and plaintiff failed to make showing necessary to overcome work-product protection) (Opp. at 23).

### 5.  The SEC properly withheld information under Exemption 6.

Plaintiff also objects to the SEC's Exemption 6 withholdings of SEC staff and contractor contact information and certain SEC staff names.  Opp. at 24-27.

First, Plaintiff misrepresents which staff names the SEC withheld.  *See* Opp. at 25-26.
The SEC withheld only "the names of SEC staff who were involved in the internal review, either
as individuals who had access to the databases at issue in the control deficiency or as individuals
being interviewed by the internal review team."  SMF ¶24.  The SEC did not withhold the names
of the SEC staff and contractors who conducted the internal review.  *Cf. id*.  Individuals
potentially involved in the control deficiency may be harassed, so they have a privacy interest in
not having their names publicly released*.  See* Memo at 19.  As discussed further below, Plaintiff
has not identified a public interest in knowing the names that would overcome that privacy
interest.

Plaintiff also objects to the SEC's withholding of SEC staff and contractors' email
addresses and phone numbers.  Opp. at 26-27.  Plaintiff ignores that courts often protect
employee contact information under Exemption 6 because individuals have a privacy interest in
information that could lead them to being harassed if released.  *See* Memo at 18-19; *see also Hall
& Assocs. v. U.S. EPA*, No. 19-1095 (RC), 2020 WL 4673411, at *5 (D.D.C. Aug. 12, 2020)
("Courts have also upheld the withholding of email addresses used for work purposes where they
are not publicly available."); *Waterman v. IRS*, 288 F. Supp. 3d 206, 211-12 (D.D.C. 2018)
("contact information for individual [agency] employees sheds little light on an agency's
performance of its statutory duties, yet exposes individual employees to threatening or harassing
contacts from the public") (internal citation and quotation omitted), *vacated on other grounds*,
755 F. App'x 26 (D.C. Cir. 2019), *remanded*, 2021 WL 4262722 (D.D.C. Sept. 20, 2021).

Plaintiff cites cases that are factually distinguishable from the present circumstances.  *See
Prechtel v. FCC*, 330 F. Supp. 3d 320, 329 (D.D.C. 2018) (ordering release of email addresses of
individuals who "had ample indication that their email addresses could be made public,

mitigating any expectation of privacy" and were specifically warned that their names and addresses would be publicly available online and released) (Opp. at 26-27); *Kleinert v. BLM*, 132 F. Supp. 3d 79, 95-97 (D.D.C. 2015) (focusing on withholding of agency staff names because plaintiff "expressly disavowed" seeking email addresses and agency "wholly failed to explain why disclosure of the redacted information would subject the relevant individuals to . . . harms") (Opp. at 27); *Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) (agency had withheld both names and contact information, which were "already publicly available from the Office of Personnel Management") (Opp. at 27); *Brown v. FBI*, 873 F. Supp. 2d 388, 402-04 (D.D.C. 2012) (concluding that employee names and phone numbers were appropriately withheld under FOIA Exemption 7(C), not Exemption 6, because "*[a]ny* amount of privacy expectation outweighs the virtually nonexistent public interest") (Opp. at 27).

The SEC withheld the contact information of SEC staff and contractors as well as the names of SEC staff who had access to the databases at issue in the control deficiency or who were interviewed during the review because there is a potential for harassment from individuals who may want to question or attack individuals they think may have acted improperly in connection with handling or accessing confidential information. *See* Memo at 18-20.

Plaintiff has failed to meet its burden to overcome the privacy interests in the names and contact information the SEC withheld. To overcome a privacy interest, it is the requester's obligation to articulate a sufficient public interest. *See Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 207 (D.D.C. 2007) ("If the requesting party cannot demonstrate a public interest in disclosure then the court will not order disclosure, because, as this Circuit has noted, 'something, even a modest privacy interest, outweighs nothing every time.'"). The only "public interest" that Plaintiff identifies in the withheld information is the identification of "who

is influencing agency policy" (Opp. at 25, 26),[2] but the SEC released the names of staff at both

the SEC and BRG who conducted the internal review.  Rather than identifying a significant

public interest in the information actually withheld, Plaintiff claims with no explanation or

analysis that disclosure would be "mundane and unlikely to cause harm."  Opp. at 26.[3]

Because SEC staff and contractors have a privacy interest in the withheld information,

and Plaintiff did not articulate a sufficient and significant public interest to countervail that

privacy interest, the SEC properly withheld certain names and contact information under

Exemption 6.

### 6.  The SEC's *Vaughn* Index sufficiently describes the information withheld under the deliberative process privilege.

Plaintiff complains that the SEC's *Vaughn* Index and declarations are insufficiently

detailed (Opp. at 27-30) but ignores the descriptive information provided for the SEC's

withholdings, specifically under the deliberative process privilege.  Notably, Plaintiff does not

object to the descriptions in the *Vaughn* Index concerning the withholdings under the attorney

work-product doctrine, which, as discussed *supra*, applies to all withheld documents.

---

[2] In its "Response to Defendant's Statement of Undisputed Facts," Plaintiff briefly claims, without legal authority, "there is a heightened public interest in ascertaining how SEC behaved and how it investigated its own behavior."  ECF 17-1 at ¶30.  Even if Plaintiff had support for this statement, Plaintiff does not explain why knowing the names of people potentially involved in the control deficiency would provide relevant information.

[3] Plaintiff's cited cases (Opp. at 26) do not support Plaintiff's proposition "that disclosing the 'names' of the parties to a communication (including all staffers) is required for a Vaughn Index" and for establishing privilege claims.  *See Coastal Corp. v. Dep't of Energy*, 496 F. Supp. 57, 58-64 (D. Del. 1980) (addressing disputes concerning aspects of proposed order about elements to include in *Vaughn* index, which did not include discussion of whether specific staff names had to be included); *People for the Am. Way Found.*, 516 F. Supp. 2d at 41-42 (requiring agency to re-submit *Vaughn* index with names and affiliations of senders and recipients for purposes of segregability analysis because "*Vaughn* index did not include all parties to each communication").

The SEC withheld certain information from 55 pages of parent emails as well as the attachments to those emails.  *See* SMF ¶9; Tallarico Decl., ECF 16-3, at ¶8.[4]  Those records consist of communications between SEC staff and SEC contractors about the SEC's internal review related to the control deficiency issue.  ECF 16-3 at ¶7.  Indeed, the *Vaughn* Index identifies the parties to the communications as "SEC staff," "BRG contracting staff," and SEC's OGC staff.  ECF 16-4.  The *Vaughn* Index reflects that those parent emails contain "information about" and "discussions concerning review of certain databases to assess the scope and potential impact of the SEC's control deficiency" as well as "forensic data" produced as part of that review.  ECF 16-4 at 1-8, 12, 14-19.  The Index details records that "address the review of the handling and processing" of the *Cochran* and *Jarkesy* proceedings.  *Id.* at 1, 9.  The Index also describes withheld attachments that contain "forensic data generated by BRG staff" as part of their review.  *Id.* at 2, 4-6, 8-12, 14, 16-17.  The Index further describes withheld "discussions concerning a draft of a Commission statement relating to the control deficiency" as well as the withheld draft.  *Id.* at 13.

The SEC's briefing also stated that the final agency decisions were the "agency's final findings about the control deficiency" (Memo at 15) and "final Commission statement that was published on June 2, 2023" (ECF 16-4 at 13).  The Tallarico Declaration makes clear that the deliberative decision-making process consists of the discussion and analysis during the internal review of the control deficiency that led to the SEC's final decision, namely final findings about that control deficiency.  *See* ECF 16-3 at ¶¶8-9, 15 ("confidential discussions and the data

---

[4] Though the original page count of those withheld attachments was 1,835 pages, that number does not include the pages in one attachment, an Excel spreadsheet that consists of 587 pages when converted to PDF.  Suppl. Decl. at ¶9.  The SEC withheld in full 2,422 pages.  *Id.*

generated from the discussions . . . formed the basis for advice conveyed to SEC officials who needed to decide what actions to take in light of the internal review").

Providing any additional detail about the records would expose SEC staff's work product and deliberations during the internal review.  *See* ECF 16-3 at ¶¶14-16.  Plaintiff argues that "neither declaration establishes the withheld content is deliberative" and that the *Vaughn* entries reflect "generalities" (Opp. at 28-29), but the *Vaughn* Index explains that the records reflect the agency's work product as well as its consultative analysis and discussions on various aspects of the internal review, including the generation of forensic data, review of databases, and discussions concerning a draft Commission statement (*see* ECF 16-4).  Plaintiff also objects that the SEC's explanations are "repetitive" (Opp. at 28), but the withheld records all pertain to the same subject matter, namely records concerning the SEC's internal review, so similar explanations are expected.  *See Hall & Assocs. v. U.S. EPA*, 633 F. Supp. 3d 55, 73 (D.D.C. 2022) (approving *Vaughn* index where "many [] entries contain the same language . . . because many of the withheld documents are similar"); *Lawyers' Comm. for C.R. v. OMB*, No. 18-645 (EGS), 2023 WL 3433978, at *5 (D.D.C. May 12, 2023) ("a *Vaughn* index is not inadequate simply because an agency grouped similar documents into a single category and provided the same reason for withholding information across that category").

Plaintiff repeats its earlier argument that the withheld records are not "covered by the deliberative process privilege."  Opp. at 29.  As previously explained (*see supra* at II.A.3), the SEC has appropriately withheld these records under Exemption 5.  Further, the cases Plaintiff cited are inapposite, distinguishable, and/or out of circuit.  *See Elkem Metals Co. v. United States*, 24 C.I.T. 1395, 126 F. Supp. 2d 567, 576-77 (2000) (ordering release of schedules because dates "were incorporated into the final published schedule[s]" and "disclosure would not

reveal [agency] deliberations") (Opp. at 29); *see supra* at 9-10 (discussing Plaintiff's cited cases at Opp. 29-30).

Because the SEC's *Vaughn* Index "contain[s] an adequate description of the records and a plain statement of the exemptions relied upon," the SEC has satisfied its obligations under the FOIA. *Amiri v. NSF*, No. 1:20-cv-02006 (TNM), 2021 WL 4438910, at *5 (D.D.C. Sept. 28, 2021) (internal quotations omitted), *aff'd*, 2022 WL 1279740 (D.C. Cir. Apr. 28, 2022).

### 7. The SEC sufficiently demonstrated the foreseeable harm that would occur should the withheld records be released.

Plaintiff argues that the SEC has offered only "general statements" about how the release of the withheld records would harm the SEC. *See* Opp. at 30-34. But the Tallarico Declaration provides information about the harm that would arise if the SEC released the records.

An agency should "provide a 'focused and concrete demonstration of why disclosure of the particular type of material' will cause foreseeable harm 'in the specific context of the agency action at issue.'" *Energy Pol. Advocates v. U.S. Dep't of State*, No. 1:19-CV-03307 (TNM), 2023 WL 4198200, at *3 (D.D.C. June 27, 2023). "But even without enough explanation from the agency, the 'context and purpose' of withheld information can support a finding of foreseeable harm." *Id.*

The Tallarico Declaration is sufficient to establish foreseeable harm, as it states that disclosure of the information withheld under the attorney work-product doctrine "would deprive the SEC of its ability to withhold any information in future litigation, and consequently would deprive SEC attorneys of a zone of privacy within which to weigh facts and evidence and evaluate how to handle future litigation." ECF 16-3 at ¶14. Courts find foreseeable harm in these circumstances. *See, e.g.*, *Clemente v. FBI*, No. 1:20-cv-1527 (TNM), 2022 WL 17092585, at *6 (D.D.C. Nov. 21, 2022) (court found "reasonably foreseeable harm" in releasing

memoranda created in anticipation of litigation because it "would impede prosecutors' ability to properly prepare legal theories and would hinder their ability to effectively represent the United States in any [related] future litigation").  Plaintiff does not contest this harm in its Opposition.

Additionally, the SEC's declaration is sufficient to establish foreseeable harm, as it explains the chilling effect of disclosing deliberations in the specific context at issue here.  *See* ECF 16-3 at ¶15 (disclosure "*would* chill ongoing discussions about addressing the control deficiency the SEC identified as well as discussions about addressing future issues the SEC may face" and "staff across the SEC would likely limit their discussions and inhibit their candor in discussing issues relating to the control deficiency and other issues that may arise in the future," which "*would* make it more difficult for SEC leadership to obtain the advice necessary to efficiently and effectively address complex issues about its operations and would hamper comprehensive reviews designed to address and improve those issues") (emphasis added).  The Tallarico Declaration further explains that "[p]ublic release of these discussions would also likely deter SEC staff's future willingness to share ideas, recommendations, and preliminary thoughts on issues and matters before them."  *See id.*  Courts have found that similar declaration language adequately explained foreseeable harm.  *See, e.g., Machado Amadis*, 971 F.3d at 371 (agency "affidavit adequately explained that full disclosure of [records] would discourage line attorneys from 'candidly discuss[ing] their ideas, strategies, and recommendations,' thus impairing 'the forthright internal discussions necessary for efficient and proper adjudication of administrative appeals'"); *Lawyers' Comm.*, 2023 WL 3433978, at *9-11 (finding declaration sufficient that stated, among other things, "disclosure 'would prompt [office] staff to be less candid' or perhaps not meaningfully participate in the deliberative process, which in turn would 'seriously harm [office's] ability to function'" and also "would inhibit [office's] ability to have

18

frank and open discussions on policy matters with other parts of the Executive Branch"); *Reliant*, 520 F. Supp. 2d at 204 (releasing documents related to factual investigation "would allow a reader to probe too deeply into the thought processes of the drafters and would have a chilling effect on communication between agency employees").

The SEC's declaration further notes the risk of public confusion should the withheld discussion concerning the draft Commission statement, as well as the draft itself, be released. ECF 16-3 at ¶15 (release would "cause confusion to the public because these discussions and the draft statement contain deliberations about what the final statement should be and are not reflective of the publicly released statement"). Indeed, "the D.C. Circuit has 'long recognized that the risk of public confusion has a special force with respect to disclosures of agency positions or reasoning concerning proposed *policies*.'" *Energy Pol. Advocates*, 2023 WL 4198200, at *4 (emphasis in original) ("All of the redacted documents discuss subordinates' thoughts and analysis on proposed policies for decision-makers to review. Releasing such inchoate material could certainly mislead and foreseeably harm the agency's processes.") (internal citation omitted); *Lawyers' Comm.*, 2023 WL 3433978, at *10-11 (concluding that agency sufficiently explained "how release of the documents [at issue] . . . would cause [public confusion]" when declarant stated, inter alia, that "release of the draft documents . . . would cause public confusion because those documents contain arguments for and against certain text as well as changes, comments, and edits").

Finally, the Tallarico Declaration recognizes the potential harm in releasing the names of certain SEC staff involved in the internal review and the emails and phone numbers of SEC staff and contractors. *See* ECF 16-3 at ¶18 (disclosure would "unnecessarily expos[e] personal

information to the public"); *see also* Suppl. Decl.[5] at ¶8 ("SEC staff have considered the public's interest in disclosure against the privacy interests at stake" and "disclosed all portions of documents that it reasonably foresees could be disclosed without causing harm to the SEC's interests at stake").

Plaintiff asserts again that the information in these records is already public knowledge (Opp. at 31-32), but such a claim ignores the vital difference between records about the privileged details of an internal review and the publicly announced results of that review. Plaintiff also complains that the SEC does not address foreseeable harm in the *Vaughn* Index or the Katilius Declaration (Opp. at 31) but fails to show that the SEC is required to do so in any source in addition to the Tallarico Declaration. *See Clemente*, 2022 WL 17092585, at *2 (agency may rely on *Vaughn* index, declarations, or both in support of summary judgment); *Keeping Gov't Beholden, Inc. v. U.S. Dep't of Justice*, No. CV 17-1569, 2021 WL 5918627, at *11 (D.D.C. Dec. 13, 2021) ("the *Vaughn* index must be considered in conjunction with [the agency's] supplemental declaration"), *aff'd sub nom. Brody v. U.S. Dep't of Justice*, No. 22-5043, 2023 WL 1511679 (D.C. Cir. Feb. 3, 2023).

Finally, Plaintiff relies on cases that are distinguishable from the circumstances here.  *See Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 370-72 (D.C. Cir. 2021) (foreseeability of harm standard not met in connection with, among others, records containing "purely factual material" and where declarations did not specify harm relating to each different kind of record) (Opp. at 31-32); *Project on Gov't Oversight, Inc. v. DHS*, No. l:18- CV-2051-RCL, 2023 WL 2139380, at *9-10 (D.D.C. Feb. 21, 2023) (declarations did not specifically

---

[5] The Supplemental Declaration of Mark Tallarico is referred to herein as "Suppl. Decl."

articulate why disclosure of records would chill deliberations or create public confusion) (Opp. at 32-33).

### B.  The SEC appropriately responded to Plaintiff's Second Category.

Plaintiff asserts that the SEC did not conduct an adequate search for records responsive to the Second Category, specifically objecting to the SEC's supporting declarations and form of response.  Opp. at 10-13.  Significantly, Plaintiff does not argue that the SEC has failed to search for any documents other than documents relating to closed proceedings that were not discussed in the Second Statement.

In discussing the search, Plaintiff ignores the SEC's position that, to the extent Plaintiff seeks records relating to closed administrative proceedings affected by the control deficiency, it is improperly asking the SEC to conduct further analysis to determine whether, and in which administrative proceedings, Enforcement staff accessed adjudication memoranda.  Memo at 22-24.  Plaintiff does not dispute that a request that requires analysis would be improper or that its FOIA request is effectively asking what determinations have been made as a result of the SEC's internal review.  Thus, Plaintiff has conceded that any search for documents about closed proceedings would only be for documents that reflect the SEC's determinations about administrative proceedings impacted by the control deficiency.  *See, e.g.*, *Burke v. Inter-Con Sec. Sys., Inc.,* 926 F. Supp. 2d 352, 356 (D.D.C. 2013) (plaintiff conceded arguments raised in defendant's motion for summary judgment by failing to oppose those arguments in plaintiff's opposition and sur-reply); *Mogenhan v. DHS*, No. 06-2045 (EGS), 2007 WL 2007502, at *5 (D.D.C. July 10, 2007) (by not responding to defendant's arguments that "its search for responsive documents was reasonable and that its application of exemptions to the documents was appropriate," but "instead reiterat[ing] in her opposition that defendant was untimely in

mailing the responsive documents," plaintiff "waived any opposition to defendant's arguments about the reasonableness of its search and the application of exemptions").

While the Second Statement provides evidence that the SEC has not made any determinations about closed administrative proceedings impacted by the control deficiency, to provide additional evidence that no such documents exist, the SEC is providing a supplemental declaration. That declaration states that OGC staff consulted with the SEC staff handling the internal review of the control deficiency, and they stated that neither they nor other SEC officers or staff had determined that Adjudication memoranda were accessed by Division of Enforcement staff in administrative proceedings that were not discussed in the Second Statement, including closed administrative proceedings. Suppl. Decl. at ¶7.

The SEC's search was appropriate in these circumstances, as, under its discretion, staff sought information about potentially responsive records from those responsible for such information. *See, e.g.*, *Amiri*, 2021 WL 4438910, at *3 (agency "must show that it conducted a search reasonably calculated to uncover all relevant documents" in surrounding circumstances); *Machado Amadis v. U.S. Dep't of Justice*, 388 F. Supp. 3d 1, 14 (D.D.C. 2019) (SEC "has discretion to craft its search to meet [the] standard"), *aff'd*, 971 F.3d 364 (D.C. Cir. 2020); *Elec. Privacy Info. Ctr. v. FBI*, No. 1:17-cv-00121 (TNM), 2018 WL 2324084, at *2 (D.D.C. May 22, 2018) ("Searching for records requires 'both systemic and case-specific exercises of discretion and administrative judgment and expertise,' and is 'hardly an area in which the courts should attempt to micro-manage the executive branch.'"). Plaintiff's cases do not suggest any further search was necessary. *See Santos v. DEA*, 357 F. Supp. 2d 33, 35, 37 (D.D.C. 2004) (agency withheld all responsive records and included in affidavit "only a conclusory statement regarding the [agency's] search for responsive documents") (Opp. at 12); *Weisberg v. U.S. Dep't of Justice*,

627 F.2d 365, 370 (D.C. Cir. 1980) (agency "affidavit state[d] only that: I have conducted a

review of FBI files which would contain information that [plaintiff] has requested. . . . The FBI

files to the best of my knowledge do not include any information requested by [plaintiff] other

than the information made available to him") (Opp. at 12); *Steinberg v. U.S. Dep't of Justice*, 23

F.3d 548, 551-52 (D.C. Cir. 1994) (agency declaration "fail[ed] to describe *in any detail* what

records were searched, by whom, and through what process") (emphasis added) (Opp. at 12);

*Murray v. Fed. Bureau of Prisons*, 741 F. Supp. 2d 156, 163-64 (D.D.C. 2010) (agency's

declaration did "not establish that the systems of records actually searched were those most

likely to contain records responsive to the plaintiff's FOIA request") (Opp. at 12-13); *Defenders*

*of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 86 (D.D.C. 2009) (FOIA request involved

"six categories of records" on various subjects submitted to and consulted on by various agencies

and their offices, which initially did not respond to request and "submitted numerous [defective]

declarations") (Opp. at 13).

With respect to the administrative proceedings addressed in the Second Statement,

Plaintiff's only objection is to the format of the SEC's response.  Opp. at 12 ("SEC has . . . failed

to explain as a general matter how providing a press release can ever satisfy a FOIA request"),

13 (SEC "hasn't bothered to back up the remarkable and unprecedented suggestion that it can

respond to a FOIA request by way of a self-serving press release").  The SEC provided Plaintiff

with a link to the Second Statement to access responsive documents because the SEC believed

that response to be the most straightforward and efficient way of providing the first pages of the

Orders Instituting Proceedings.  Should Plaintiff request that the SEC provide those records in a

different format, the SEC will do so.

Because the SEC properly searched for the documents Plaintiff requested and found that none existed, and because the SEC will provide the documents linked in the Second Statement in a different format upon request, the SEC has responded to the Second Category.

### C.  No material facts are in dispute.

Plaintiff's "Response to Defendant's Statement of Undisputed Facts" (ECF 17-1 at 1-18) ("Response") does not raise any genuine dispute of material fact sufficient to defeat summary judgment.  Rather, Plaintiff purports to object to several SEC statements on various bases, all of which fail.  In general, Plaintiff does not point to any legal authority for its positions beyond bald citations to the Federal Rules of Civil Procedure and Evidence, except for one case (Response ¶22), which supports the SEC's arguments (*see supra* at 8, 18).

Plaintiff also suggests that the SEC has incorrectly quoted correspondence but fails to show any such evidence.  Response ¶¶5, 7, 12, 14; *see also* Opp. at 11.  For example, at Response ¶14, Plaintiff objected to and denied that "Plaintiff informed the SEC that its position is that it can only agree that the SEC has satisfied the Second Category request if it receives information regarding closed, settled, or otherwise disposed of administrative proceedings affected by the control deficiency" (SMF ¶14), but Plaintiff's Exhibit A states "NCLA can only agree that SEC has satisfied its request if it receives information regarding such closed/settled/otherwise-disposed-of matters" (ECF 17-3).  Indeed, Plaintiff reads certain language into that correspondence that is not there.  *Compare* Response ¶7 ("Plaintiff reluctantly agreed" to narrowing the remaining subparts of its FOIA request) *with* Plaintiff's Exhibits A and B, ECF 17-3 and 17-4 (no mention of Plaintiff's purported reluctance).

Plaintiff argues that declarants' statements are "based on hearsay not within a hearsay exemption and outside the scope of this Court's precedents permitting hearsay when such

hearsay is based on the declarant's supervision of a search."  Response ¶9; *see also* Response

¶12.  The Supplemental Declaration makes clear, however, that the declarant is familiar both

with the records released to Plaintiff in connection with its FOIA request and with SEC staff's

communications with Plaintiff about its FOIA request.  Suppl. Decl. at ¶4.

    To the extent Plaintiff also uses its Response to reiterate arguments in its briefing, the

SEC has already addressed those arguments.  *See supra* at II.B (addressing Response ¶¶13, 15

concerning the SEC's response to the Second Category), II.A (addressing ¶¶5, 16, 18, 21-30

concerning FOIA Exemptions withholdings), II.A.1 (addressing ¶¶17, 18, 19, 20 concerning

consultant corollary).

## III.   <u>CONCLUSION</u>

    For the foregoing reasons, and the reasons described in its opening papers, the SEC

respectfully requests that the Court grant the SEC's motion for summary judgment.


Dated:  August 23, 2023                          Respectfully submitted,


                                                 /s/ *Alexandra Verdi*
                                                 Alexandra Verdi (NY Reg. No. 5480934)
                                                 Office of the General Counsel
                                                 U.S. Securities and Exchange Commission
                                                 100 F Street, NE
                                                 Washington, D.C. 20549
                                                 Telephone: (202) 551-5057
                                                 Fax: (202) 772-9263
                                                 verdim@sec.gov

                                                 *Counsel for Defendant*
                                                 *U.S. Securities and Exchange Commission*