**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

NEW CIVIL LIBERTIES ALLIANCE,

*Plaintiff*

v.                                                    Civil Action No. 1: 22-cv-03567 (CJN)

SECURITIES EXCHANGE COMMISSION,

*Defendant.*

## MEMORANDUM OPINION

The New Civil Liberties Alliance submitted a FOIA request to the Securities and Exchange Commission regarding a "control deficiency" that allowed enforcement personnel to access adjudicative materials. Following various procedural steps, the following issues remain unresolved: whether the Commission properly withheld certain materials as covered by the attorney work-product doctrine or as unduly invading employees' privacy interests; and whether the Commission conducted an adequate search for certain records. For the reasons that follow, the Court agrees with the Commission that its withholdings were proper and that its search was adequate, and therefore grants the Commission's Motion for Summary Judgment, ECF 16.

## I.    Background

On April 5, 2022, the Securities and Exchange Commission publicly disclosed a "control deficiency related to the separation of its enforcement and adjudicatory functions within its system for administrative adjudications." ECF 17 at 3. Specifically, "certain [SEC] databases… were not configured to restrict access by enforcement personnel to memoranda drafted by adjudication staff." *Id.* That meant that, for a period of time, some SEC lawyers were able to access the files of the very

administrative judges in front of whom they had pending matters. The April 5 statement listed two widely-known adjudications—*SEC v. Cochran* and *Jarkesy v. SEC*, both of which reached the Supreme Court—that may have been impacted by the control deficiency. ECF 7 at 3. And it emphasized that the Commission had tasked outside investigators at the Berkeley Research Group— as well as an internal "review team"—with reviewing the Commission's handling of those two cases.[1] *Id.* at 3–4. Notably, the statement indicated that the control deficiency may have impacted other cases in addition to *Cochran* and *Jarkesy*—and mentioned that "we anticipate publishing additional findings in the near future." *Id.*

The New Civil Liberties Alliance (NCLA)—counsel for plaintiff in the *Cochran* matter— didn't wait for those additional findings, instead submitting a FOIA request to the Commission in June 2022 for various categories of records relevant to the control deficiency. ECF 16-2 at 2–3. By November 2022, the Commission had still not responded to the FOIA request, prompting the NCLA to file this suit. ECF 1. Two months later, following the NCLA's filing of an amended complaint, the Commission issued an interim partial response, consisting of 33 partially redacted pages. ECF 16-2 at 3. The Commission stated that this initial production was responsive to certain categories of NCLA's FOIA request and that future productions would address other categories.

In March 2023, the Commission informed the NCLA that it had identified approximately 7,300 records—comprising about 51,700 pages—that were potentially relevant to other categories of the request. *Id.* In light of that volume, the parties struck a compromise: the Commission would process two general categories of records: (1) the reports prepared by the Berkeley Research Group and (2) the first page of something called an "Order Instituting Proceedings" for each proceeding in which the

---

[1] The Commission later retained General Dynamics to assist Berkeley. The NCLA's amended complaint does not mention General Dynamics; insofar as it is relevant, all statements regarding Berkeley in this opinion apply equally to General Dynamics. ECF 16-1 at 7.

control deficiency occurred.  ECF 16-3 at 2.

In June 2023, the Commission produced 55 pages of records representing emails between Commission staff and the Berkeley Research Group regarding the control deficiency review.  ECF 16-1 at 4.  But the Commission withheld 1,855 documents under FOIA exemption (b)(5) on the ground that they are covered by the attorney work-product doctrine.  *Id.* at 3.  And, applying exemption (b)(6), the Commission redacted from those 55 pages "certain names, email addresses, and telephone numbers of SEC staff and SEC contractors," as well as "the names of SEC staff who were involved with the internal review."  *Id.* at 8.

As for the Orders Instituting Proceedings, on June 2, 2023, the Commission issued a public press release that cited and provided links to all cases it deemed to have been affected by the control deficiency.[2]  The Commission notified the NCLA that, with this press release, it had satisfied its obligations with respect to the second agreed-upon category of records.  The NCLA disagreed.  It therefore sought from the Comission information regarding whether any closed, settled, or otherwise disposed-of matters were affected by the control deficiency.  *Id.*  The Commission responded that its public list had identified and contained materials regarding every administrative proceeding in which it had determined that one or more adjudication memoranda were accessed by enforcement staff— and that having to provide materials for any other proceeding would be improper under FOIA by requiring the Commission to conduct further analysis.  *Id.*

Considering its work to be done, the Commission has moved for summary judgment.  ECF 16. The NCLA opposes that motion in all respects.  ECF 17.

## II.     Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as

---

[2] https://www.sec.gov/newsroom/speeches-statements/second-commission-statement-relating-certain-administrative-adjudications.

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In the FOIA

context, summary judgment may be granted on the basis of agency affidavits if they contain reasonable

specificity of detail rather than merely conclusory statements, and if they are not called into question

by contradictory evidence in the record or by evidence of agency bad faith." *Evans v. Fed. Bureau of

Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (internal alteration and quotation marks omitted).  The

agency bears the burden of justifying the withholding of information under an exemption.

*100Reporters v. United States Dep't of State*, 602 F. Supp. 3d 41, 54 (D.D.C. 2022) ("When an agency

withholds records based on a FOIA exemption, it bears the burden of justifying its withholding."); *see

also Fed. Open Mkt. Comm. of the Fed. Rsrv. Sys. v. Merrill,* 443 U.S. 340, 352, 99 S.Ct. 2800, 61

L.Ed.2d 587 (1979); *Loving v. Dep't of Def*., 550 F.3d 32, 37 (D.C. Cir. 2008).

### III.    Analysis

**A.    Berkeley Research Group Documents**

The Commission withheld information relating to the work of Berkeley Research Group under

FOIA Exemptions 5 and Exemption 6; the Court takes each exemption in turn.

**1.    § 552(b)(5) Withholdings**

As noted above, the Commission withheld certain information relating to the work of Berkeley

Research Group under FOIA Exemption (b)(5) on the ground that that information is covered by the

attorney work-product doctrine.  *See supra* at 2.  It is well established that Exemption (b)(5) can apply

to attorney work product.  *Jud. Watch, Inc. v. Dep't of Just.*, 432 F.3d 366, 369 (D.C. Cir. 2005)

("FOIA Exemption 5 incorporates the [attorney] work-product doctrine" enshrined in the rules of

evidence and civil procedure.).  But, NCLA argues, that exemption is inapplicable here for two

reasons.

NCLA first argues that because Berkeley Research Group is not a government entity, communications with it cannot qualify as "inter-agency or intra-agency memorandums or letters." 5 U.S.C. § 552(b)(5).  Whatever the textual force of this argument, it runs straight into the so-called consultant corollary.  In particular, the Court of Appeals has repeatedly noted that communications with non-agency parties can still qualify under Exemption (b)(5) so long as certain conditions are met. *See, e.g., Soucie v. David,* 448 F.2d 1067 (D.C. Cir. 1971); *Ryan v. Dep't of Just.*, 617 F.2d 781, 789–91 (D.C. Cir. 1980); *Jud. Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 130–31 (D.C. Cir. 2005); *Nat'l Inst. of Mil. Just.* (*NIMJ*) *v. U.S. Dep't of Def.*, 512 F.3d 677, 685 (D.C. Cir. 2008); *Georgia v. United States Dep't of Just.*, No. 23-5083, 2025 WL 2314892, at *7 (D.C. Cir. Aug. 12, 2025).  Where, as here, the government contends that the non-agency party is acting as a "consultant"—and thus that the "consultant corollary applies—the government must establish that the third party is "disinterested" such that it "comes to the table with no obligation or stake in the outcome of an agency's process other than a duty to provide good advice to the agency, just as the agency's own personnel is expected to." *Am. Oversight v. United States Dep't of Health & Hum. Servs.*, 101 F.4th 909, 922 (D.C. Cir. 2024); *see also Wheatland v. United States Dep't of Health & Hum. Servs.*, 2025 WL 1761697, at *3 (D.D.C. Apr. 24, 2025) (even if "the agency and non-agency share a common goal or interest at some level of generality," the consultant corollary applies only if "the outsider is disinterested"—that is, only if the outsider "comes to the table with no obligation or stake in the outcome of an agency's process other than a duty to provide good advice to the agency, just as the agency's own personnel is expected to.").

The record demonstrates that Berkeley Research Group meets this test.  It had "no interest related to the SEC's control deficiency other than providing assistance pursuant to its contract with the SEC"; the Commission solicited and retained Berkeley to support its work; and the Commission sought Berkeley's specific expertise as to conducting forensic analyses.  ECF 16-1 at 7.  The NCLA argues that Berkeley was not a "proper" substitute for a wholly internal review such that the consultant

corollary "cannot credibly be argued to apply." ECF 17 at 22. But the corollary would be unnecessary and redundant if it only applied to internal reviews, and the NCLA cites no case suggesting consultants cannot be deemed disinterested if they receive compensation for their work or have a generalized interest in receiving more contracts from the employing agency.

That doesn't end the matter, for the materials must still qualify under the attorney work-product doctrine. That doctrine isn't limited to work product created by attorneys; rather, it applies to materials "prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). The NCLA argues that Berkeley didn't do its work "in anticipation of litigation," contending that the Commission would have conducted a review of the control deficiency even if it did not fear being sued. ECF 17 at 19. But the Commission's unrebutted declarations state expressly that a concern about future litigation motivated Berkeley's work, which seems quite reasonable for various reasons, including the fact that the NCLA's own client, Michelle Cochran was planning to "file a complaint in district court" as of June 2023. ECF 17 at 6. And even if the Commission had *other* reasons for the work done by Berkeley, the Court of Appeals has never held that a document is covered by the work-product doctrine only if it was prepared solely in anticipation of litigation. *See EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 968-69 (D.C. Cir. 1999) ("[E]ven if [respondent undertook its investigation in the ordinary course of business], [petitioner's] recharacterization of [respondent's] motivation does nothing to undermine [respondent's] contention that it genuinely feared litigation"); *see also In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 759–60 (D.C. Cir. 2014) (Kavanaugh, Circuit Judge) ("It is thus not correct for a court to presume that a communication can have only one primary purpose. It is likewise not correct for a court to try to find the one primary purpose in cases where a given communication plainly has multiple purposes. Rather, it is clearer, more precise, and more predictable to articulate the test as follows: Was obtaining or

6

providing legal advice a primary purpose of the communication, meaning one of the significant purposes of the communication?").

The NCLA offers up one more argument here: that the Commission "voluntarily waived the protection of Exemption 5 by sharing the underlying documents with its favored vendors and issuing press releases linking to selected records." ECF 17 at 22. But "disclosure to a third party does not waive the privilege unless such disclosure, under the circumstances, is inconsistent with the maintenance of secrecy from the disclosing party's adversary," and "waiver would occur . . . only if the disclosure substantially increases the possibility of an opposing party obtaining the information." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980). The NCLA has provided no evidence to suggest that the Commission shared the withheld records with anyone other than its own staff and contractors acting on its behalf, like Berkeley. And the NCLA hasn't demonstrated that withheld information has made its way into the public domain. *See Assassination Archives & Rsch. Ctr. v. CIA*, 334 F.3d 55, 60-61 (D.C. Cir. 2003) (no waiver where plaintiff "made no specific showing that any of the . . . disclosures revealed information that is 'as specific as' and 'matches' that included in the [withheld material]").[3]

### 2.    § 552(b)(6) Withholdings

Turning to the Commission's redaction of certain information under Exemption 6, that exemption applies to "personnel files and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(5). In the NCLA's view, the Commission has misapplied Exemption 6 by "improperly [withholding] the names of government employees and 'consultants' or 'contractors' who helped the government evade

---

[3] The Commission also argues that these materials are covered by the deliberative process privilege. Because the Court has already decided that the attorney work-product doctrine applies, it will not address this question.

transparency and the requirements of the Inspector General Act."  ECF 17 at 24.  But that's not really correct; the Commission redacted only the names of "individuals who had access to the databases at issue in the control deficiency or as individuals being interviewed by the internal review team."  ECF 16-1 at 8.  The names of individuals with no direct relation to the control deficiency—like some Commission employees and Berkeley consultants—were not withheld.  ECF 18 at 12.  That makes sense:  the Commission redacted the names of "[i]ndividuals potentially involved in the control deficiency" because they "may be harassed," giving them "a privacy interest in not having their names publicly released."  *Id.*

Against this legitimate concern, the NCLA has not identified a public interest in knowing the redacted names.  To overcome those persons' privacy interests, the NCLA must establish a public interest in that information.  *See Reliant Energy Power Generation, Inc. v. FERC*, 520 F. Supp. 2d 194, 207 (D.D.C. 2007) ("If the requesting party cannot demonstrate a public interest in disclosure then the court will not order disclosure, because, as this Circuit has noted, 'something, even a modest privacy interest, outweighs nothing every time.'").  But the only "public interest" that the NCLA identifies in the withheld information is the identification of "who is influencing agency policy"— which is a mismatch with the information, since the policy at issue is the forward-looking response to the control deficiency, not the deficiency itself.  ECF 17 at 25, 26.  And again, the Commission released the names of staff at both the SEC and Berkeley who were involved in the internal review; those are the forward-looking names that relate to the  claimed public interest in knowing who is involved in influencing future policy.

The NCLA finally argues that "government employees' email addresses usually can't be withheld, because they have no privacy interest in concealing their taxpayer-provided email address."  ECF 17 at 27.  But where, as here, about the reasonably foreseeable harm is harassment, courts in this District have appropriately withheld such redactions.  *See Waterman v. IRS*, 288 F. Supp. 3d 206, 211-

12 (D.D.C. 2018) ("contact information for individual [agency] employees sheds little light on an agency's performance of its statutory duties, yet exposes individual employees to threatening or harassing contacts from the public"); *see also Hall & Assocs. v. U.S. EPA*, 2020 WL 4673411, at *5 (D.D.C. Aug. 12, 2020).

**B.    Orders Instituting Proceedings**

That leaves the Commission's approach to the Orders Instituting Proceedings.  The NCLA attacks the Commission's decision "to simply refer to a press release rather than respond to the [NCLA's] FOIA" request, ECF 17 at 10; a response, in the NCLA's estimation, would provide a more detailed account of how the various documents were found.  But the Commission has since provided two declarations that explain the process the Commission undertook to identify proceedings in which it learned of control deficiencies.  ECF 16-2, 16-3.  The NCLA has not identified any serious concern with those declarations, and the Court therefore takes them at their word—that is, that the Commission has disclosed all of the proceedings it has currently identified as having had a control deficiency. FOIA does not require agencies to conduct new research, and generate *new* findings, or create new records.  *See Hall & Assocs. v. U.S. EPA*, 2018 WL 1896493, at *2 (D.C. Cir. Apr. 9, 2018) (FOIA does not require agencies to "undertake research, analysis, and formulation of opinions."); *Jarvis v. Comm'r, Soc. Sec. Admin.*, 2018 WL 6722401, at *1 (D.C. Cir. Dec. 18, 2018) ("[N]o duty to create statistical records in response to appellant's FOIA request."); *Skinner v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2013 WL 3367431, at *1 (D.C. Cir. May 31, 2013).

**IV.    Conclusion**

For the reasons stated above, the Commission's Motion for Summary Judgment, ECF 16, is

GRANTED.  A separate Order will accompany this opinion.


DATE:  August 29, 2025

CARL J. NICHOLS
United States District Judge